Aurora **CALDERON**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 08–94–00221–CR.

Court of Appeals of Texas,
El Paso.

May 8, 1997.

Norbert J. Garney, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

### OPINION

McCLURE, Justice.

This appeal addresses the issue of whether the Appellant, Aurora Calderon ("Calderon"), was denied effective assistance of counsel. It also provides this Court an opportunity to clarify its position on the question of whether, and under what circumstances, an instruction to disregard will cure the prosecution's improper comment on a criminal defendant's failure to testify. Calderon was found guilty of possessing less than twenty-eight grams of heroin with the intent to distribute it. She was sentenced to twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

## SUMMARY OF THE EVIDENCE

On October 1, 1993, members of the Culberson County Sheriff's Department raided Calderon's residence following a tip by a confidential informant that Calderon and another person were at her home packaging heroin and cocaine for distribution. Deputies of the department executed a search warrant and found Calderon and four others sitting around a coffee table. On the couch, they discovered a plate with strips of plastic wrap, tiny squares of a black tarry substance that later turned out to be heroin, and more squares of heroin already packaged. They also found a police scanner tuned to their frequency. Calderon was arrested but she was not searched at the scene. Instead, Department of Public Safety Officer Damas Lopez transported her to the jail where she was searched. Several days later, Officer Lopez discovered a small package of cocaine in his vehicle. Calderon was charged with possession of less than twenty-eight grams of heroin with the intent to distribute it and with possession of less than twenty-eight grams of cocaine. She was acquitted of the cocaine possession charge.

## EFFECTIVE ASSISTANCE OF COUNSEL

In her first point of error, Calderon asserts that she was denied the effective assistance of counsel due to fatal mistakes made during voir dire, during the guilt-innocence phase, and during the punishment phase. In her second point of error, Calderon alleges that the prosecution, during closing arguments, persistently made comments on her failure to testify. A defendant is entitled to "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App. 1991). However, a defendant is not entitled to errorless counsel or counsel whose competency is judged by hindsight. *Stafford*, 813 S.W.2d at 506.

With respect to the guilt-innocence phase of a trial, the proper standard for determining claims of ineffective assistance under the Sixth Amendment is the two-step analysis adopted by the United States Supreme Court in *Strickland v. Washington*. *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Under the first prong, the defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). The defendant must demonstrate that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms. *Vasquez*, 830 S.W.2d at 949. Under the second prong, the defendant must establish that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Jackson*, 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Jackson*, 877 S.W.2d at 771; *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Jackson*, 877 S.W.2d at 771.

When a claim of ineffective assistance of trial counsel is reviewed by this Court, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and the appellant must overcome the presumption that the challenged conduct can be considered sound trial strategy. *Jackson*, 877 S.W.2d at 771; *Lyon v. State*, 885 S.W.2d 506, 519 (Tex.App.—El Paso 1994, pet. ref'd). Consequently, allegations of ineffectiveness of counsel must be firmly founded in the record. *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Crim.App.1983); *Lyon*, 885 S.W.2d at 519. Under the *Strickland* test, the appellant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Jackson*, 877 S.W.2d at 771; *Lyon*, 885 S.W.2d at 519.

### Voir Dire

Calderon asserts that her trial counsel was ineffective during voir dire in that he

challenged one veniremember who had stated that he could not under any circumstances impose the maximum punishment for the charged crime of heroin possession with intent to distribute. The judge granted his challenge. Calderon also alleges that her counsel was ineffective during voir dire because he did not challenge three veniremembers who in varying degrees stated that they would have difficulty in granting the minimum punishment of five years' probation for the same crime. Her counsel, however, did elicit from these veniremembers that they would be willing to impose probation for some time greater than the minimum. Finally, Calderon notes the fact that her counsel opposed a challenge to a veniremember who had only a second grade education and who spoke very little English. The trial court granted the State's challenge.

The purpose of *Strickland's* first prong is to obviate the prejudicial effect of hindsight. *See, e.g., Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App.)("A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time."), *cert. denied*, 510 U.S. 840, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993); *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App.), *cert. denied*, 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). In other words, the question of sound trial strategy is determined by viewing all the circumstances as they appeared to counsel at the time of trial. As such, Calderon bears a tremendous burden in proving that her counsel fell below some objective norm of reasonable practice in his representation. We note that the record is devoid of evidence of the precise reasoning that her counsel employed during the voir dire process. *See, e.g., Jackson*, 877 S.W.2d at 770–71 (refusing to infer ineffectiveness during voir dire when the record did not reflect the attorney's reasoning for failing to challenge a veniremember); *Delrio v. State*, 840 S.W.2d 443, 446–47 (Tex.Crim.App. 1992)(same). Therefore, any number of strategic theories can be inferred from his actions that could reasonably explain the choices he made for each challenged situa-

tion. For example, the State suggests that Calderon's counsel may have challenged the first veniremember who could not consider the maximum punishment because he had other reasons for wanting to strike that veniremember and opted to use what would otherwise be considered a State's challenge, thus preserving his preemptory challenges. Additionally, Calderon's counsel may have reserved challenging the three veniremembers who could not consider the minimum because he felt that they would be more favorable to his client during the guilt or innocence phase of the trial or because he felt that they would be more willing to impose probation though they could not consider the minimum. In all the complained of situations, Calderon has failed to prove *Strickland's* first prong. With respect to *Strickland's* second prong, the record does not reflect whether any of the three veniremembers that could not impose the minimum punishment even sat on the jury. Certainly, the veniremember who could not speak English was not empaneled. Therefore, Calderon has failed to show that her counsel's actions during voir dire prejudiced her case in any way.

### Guilt–Innocence

Calderon suggests that her counsel's failure to give an opening statement demonstrates his overall ineffectiveness, yet provides no argument, authority, or evidence of how this alleged lapse on her counsel's part constituted ineffectiveness. The option for defense counsel to deliver an opening statement immediately after the State makes its opening statement is entirely discretionary. *See* Tex.Code Crim.Proc.Ann. art. 36.01(b)(Vernon Supp.1996). Few matters during a criminal trial could be more imbued with strategic implications than the exercise of this option. Evidently, Calderon's counsel had this in mind when he explicitly reserved his opening statement. Calderon elected not to present a defense after the State rested. As is obvious from her counsel's closing arguments, her primary trial strategy was to demonstrate that the State had not proven its case beyond a reasonable doubt. She argued that her mere presence at the scene

did not implicate her in any criminal activity. She also urged that the State had not proven any affirmative links tying her to the drugs. Given this tenor as the trial unfolded, an opening statement may have been deemed unnecessary, if not strategically undesirable.

■ Calderon further alleges that her counsel was factually unprepared. She offers as proof an incident at trial concerning the admissibility of the police scanner taken from her home. Her counsel objected to its admission based on his belief that it had been taken from her home prior to the events of October 1, 1993. However, two deputies of the sheriff's office testified that the scanner was confiscated at the time of the raid. The objection was overruled, and the scanner was admitted.

■ *Strickland* found its genesis in a defense counsel's supposed failure to adequately investigate the factual underpinnings of his client's case. It is axiomatic that defense counsel, to be even minimally effective, must possess a working knowledge of the factual background of a case. *See Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App.1986). However, isolated lapses or mistakes during the trial are not necessarily indicative of ineffectiveness. *See McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). We find unpersuasive Calderon's assertion that this supposed errant objection demonstrates her counsel's unfamiliarity with the facts of her case. Counsel may have had good reason to believe that the scanner had not been confiscated during the raid on Calderon's house. His objection, based on this good faith belief, put the particular offering to the acid test of the adversarial process, a function that is the very wellspring of effectiveness. Calderon has failed to demonstrate that this isolated incident satisfies *Strickland*'s first prong. Furthermore, counsel demonstrated throughout the entire trial that he had a firm grasp of the factual background of her case.

■ As a final indication of ineffectiveness during the guilt-innocence phase, Calderon suggests that her counsel allowed a deputy sheriff with minimum training and virtually no experience to testify, unchallenged, as an expert in drug related activities. At trial, deputy sheriff Steve Lauderdale testified for the State. He related that he had completed the Odessa police academy and passed the state exam to become a certified peace officer. Prior to these events, Lauderdale had worked as a deputy sheriff with the Reeves County Sheriff's Department. He began working for the Culberson County Sheriff's Department on January 6, 1993 and had been at his current post for some nine months prior to the raid on Calderon's house. Lauderdale testified that the black substance on the plate appeared to be heroin. He also testified that the scene with the plastic wrap cut up in strips, the tiny bundles of the black substance already wrapped, and the five individuals sitting around the coffee table apparently wrapping up the remaining black squares was in his opinion indicative of preparing heroin for distribution. He based his opinion on the training that he had and the actual situations that he had observed as a peace officer.

■ A witness may testify as an expert if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue and if that witness is qualified as an expert by knowledge, skill, experience, training, or education. Tex.R.Crim.Evid. 702. Whether a witness qualifies as an expert is a question within the trial court's discretion, and the decision to admit the testimony will not be disturbed absent a clear abuse of discretion. *See, e.g., Penry v. State*, 903 S.W.2d 715, 762 (Tex.Crim.App.1995); *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim.App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991). If the trial court finds that a witness possesses special knowledge or expertise based on training, education, or experience that will aid the trier of fact, it may qualify the witness as an expert. *See, e.g., Joiner v. State*, 825 S.W.2d 701, 707 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993); *Matson v. State*, 819 S.W.2d 839, 851 n. 10 (Tex.Crim.App. 1991)("No rigid formula exists for determining whether a particular witness is qualified to testify as an expert. A witness may be

qualified by reason of knowledge, skill, experience, or training, regardless of its source."). This includes a finding that a police officer may testify as to aspects of the trade in illicit drugs. *See, e.g., Williams v. State,* 826 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd)(holding that a police officer with the Houston Tactical Response Unit could testify about a narcotics transaction); *cf. Hill v. State,* 647 S.W.2d 306, 309 (Tex.App.—Corpus Christi 1982, pet. ref'd)(finding that a police officer could testify about a murder scene). In this case, the State met its burden to establish Lauderdale as an expert in the drug trade in that he had specialized training and experience in that area. The trial court did not abuse its discretion in allowing Lauderdale to testify that it appeared Calderon and her friends were packaging heroin for distribution. Because the testimony was not objectionable, Calderon's counsel was not ineffective for failing to object to it.

**Punishment**

 When the alleged error of counsel deals with the punishment phase as opposed to the guilt-innocence stage, the standard for determining whether applicant suffered ineffective assistance of counsel is found in *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App. 1980), rather than *Strickland v. Washington. Ex parte Walker,* 794 S.W.2d 36, 37 (Tex. Crim.App.1990); *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App.1987). Under the *Duffy* test, we must determine whether counsel was reasonably likely to render effective assistance and whether counsel reasonably rendered effective assistance. *See Ex parte Langley,* 833 S.W.2d 141, 143 (Tex.Crim.App. 1992); *Craig v. State,* 825 S.W.2d 128, 130 (Tex.Crim.App.1992). This analysis requires an examination of the "full scope of 'assistance'—representation, performance, delivery—for effectiveness rather than adequacy of ability or capacity to advise." *Ex parte Duffy,* 607 S.W.2d at 516 n. 17. In other words, the totality of the representation is considered. *See Ex parte Walker,* 777 S.W.2d 427, 431 (Tex.Crim.App.1989)(holding that a court's inquiry must necessarily include "the pre-trial representation of the [defendant], the guilt-innocence stage of the tri-

al and the punishment stage of the trial"). However, as under *Strickland,* a defendant's constitutional right to counsel does not mean errorless counsel or counsel whose competency is judged by hindsight. *Ex parte Cruz,* 739 S.W.2d at 58. Any allegations of ineffectiveness must be firmly founded in the record. *See Faz v. State,* 510 S.W.2d 922, 926 (Tex.Crim.App.1974); *Long v. State,* 502 S.W.2d 139, 141 (Tex.Crim.App.1973). Trial strategy must be taken into account in gauging the effectiveness of representation. *See id.* at 141. Though *Duffy* looks solely to the reasonableness of representation and does not apply *Strickland*'s second prong, a harm analysis is required. *See Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); *cf. Ex parte Canedo,* 818 S.W.2d 814, 815 n. 3 (Tex.Crim.App.1991)(discussing harm); *Ex parte Felton,* 815 S.W.2d 733, 736 (Tex.Crim. App.1991) (employing a harm analysis to determine that counsel had been ineffective). The burden is on the appellant to demonstrate ineffective assistance of counsel by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App. 1985); *Jaile v. State,* 836 S.W.2d 680, 683, 686–87 (Tex.App.—El Paso 1992, no pet.).

Calderon characterized the punishment stage of her trial as a disaster and systematically discusses at least a dozen instances to indicate ineffectiveness on the part of her trial counsel. These instances may be grouped into three categories—evidentiary matters, the charge, and final argument. Calderon asserts that the cumulative effect of these errors added up to unreasonable representation.

*Evidentiary Issues*

 At trial, the State elicited testimony from Harvey Cabuzuela, its confidential informant. During the night of the raid on Calderon's residence, Cabuzuela tipped members of the Culberson County Sheriff's Department that Calderon was preparing drugs for sale. He testified that he went to Calderon's residence and observed her and Mayo Gomez packaging cocaine and heroin. He testified that no other people were in the residence at that time. After the State con-

cluded its initial examination of Cabuzuela, Calderon's counsel asked to approach the bench and objected to the admission of the extraneous offense of packaging cocaine for sale. He told the court that the testimony concerning the cocaine was related before he could object and that he decided to wait and object to the bench. His objection was overruled.

Calderon asserts that her trial counsel should have immediately objected on the basis of relevance and Rule 403 of the Texas Rules of Criminal Evidence. With respect to criminal offenses committed on or after September 1, 1993, unadjudicated extraneous offenses have been made relevant, by statute, to the punishment phase of a criminal trial. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(Vernon Supp.1996); *Cedillo v. State*, 901 S.W.2d 624, 626 (Tex.App.—San Antonio 1995, no pet.); *Voisine v. State*, 889 S.W.2d 371, 372 (Tex.App.—Houston [14th Dist.] 1994, no pet.). This legislative change has given the prosecution wide latitude with respect to the types of evidence that may be admitted during punishment. This statute provides:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(Vernon Supp.1996).

Because the offense for which Calderon was convicted occurred on October 1, 1993, this statute was in force. Therefore, her counsel did not err in not immediately challenging the evidence concerning the cocaine based on relevancy. Though her counsel could have objected that the probative value of the evidence in question was substantially outweighed by its danger of unfair prejudice, *see* TEX.R.CRIM.EVID. 403, such an objection, in light of the admissibility of unadjudicated extraneous offenses, would most likely have been to no avail. The question whether to object to evidence, especially evidence that is not patently inflammatory and made admissible by statute, based on Rule 403 grounds is strategically imbued and a matter of pure discretion. When the record reflects little more than the fact that certain evidence was admitted, even evidence that on its face appears to have little probative value when measured against its prejudicial effect, it is difficult for us to determine whether counsel acted through ignorance or in an otherwise ineffective manner. Counsel may have had good reason, based on sound trial strategy, for not objecting to the evidence. Furthermore, during the bench conference in which counsel did lodge an objection to this evidence, he reflected a reluctance to object to this evidence in front of the jury. What reasons he had, we may only speculate.

Along these same lines, Calderon asserts that her counsel should have objected to evidence elicited by the State concerning the proximity of her house to several public schools and a church. During trial, the State went into great detail on this matter, offering exhibits and measuring distances. The State has wide latitude concerning the type of evidence it may offer during the punishment phase, including the facts and circumstances surrounding the offense. TEX.CODE CRIM. PROC.ANN. art. 37.07, § 3(a)(Vernon Supp. 1996); *see, e.g., Mayes v. State*, 816 S.W.2d 79, 85 (Tex.Crim.App.1991); *San Roman v. State*, 842 S.W.2d 801, 803 (Tex.App.—El Paso 1992, pet. ref'd)(holding that "testimony concerning the nature and circumstances of a crime and its effect on the victim is admissible"). The evidence of Calderon's proximity to the Van Horn schools and a church falls within this rule. Though this evidence may very well have been amenable to a Rule 403 objection, Calderon's counsel chose a differ-

ent tact. He cross-examined the deputy that testified as to the location of Calderon's house. Calderon's counsel was able to elicit the facts that Van Horn is a very small town and that the distance from any given point in town to any other point is not great. During closing argument, he trivialized this evidence by reemphasizing that Van Horn is small and that Calderon would be relatively close to the schools, churches, and any other place no matter where she was in Van Horn. Given these efforts, we cannot say that Calderon's counsel was ineffective.

▮▮▮ Calderon directs us to another situation in which the State attempted to elicit reputation and opinion testimony from Chief Deputy Frank B. Deishler ("Deishler"). During further examination of Deishler, the following colloquy occurred:

Q. Chief, how long have you lived in Van Horn?

A. Seven years in March.

Q. And how long have you known Ms. Aurora Calderon?

A. Oh, well, I never knew her that good. You know, I just knew who she was and everything.

Q. Throughout that whole seven years?

A. Yes, sir.

Q. Based on what you know or have heard of Ms. Calderon, do you have an opinion as to her reputation for being a law abiding citizen and a peaceful citizen in the community of Van Horn?

THE COURT: Just answer yes or no.

A. No.

Q. Have you been able to formulate an opinion as to—

THE COURT: Wait a minute, he said no. That's as far as you can go.

MR. JUVRUD: Judge we, can go into opinion versus reputation.

THE COURT: Well, let's—he said he didn't have an opinion.

MR. JUVRUD: On the reputation. He may have an opinion himself as to her, whether she's law abiding or not.

THE COURT: Okay. Go ahead.

MR. BYRNE: Thank you, co-counsel.

Q. (BY MR. BYRNE): Chief, do you have an opinion as to whether or not Ms. Calderon is a law abiding, peaceful citizen in the community of Van Horn?

A. Yes, I do have an opinion.

Q. And what is that opinion?

A. From all the information I've gathered, it's a bad reputation.

[DEFENSE COUNSEL]: Your honor—

Q. Is it—

THE COURT: Just a minute. Ask the question in a way that he can answer the question without getting off into destroying this whole trial.

MR. BYRNE: Thank you, Your Honor.

THE COURT: Just answer the question yes or no. Now, ask him.

MR. BYRNE: He answered yes. Then my follow-up—

THE COURT: No. Your follow-up has got to be is it good or bad.

MR. BYRNE: That's what I'm getting to, Judge.

Q. (BY MR. BYRNE): Is that opinion good or bad, Chief?

A. Bad.

Calderon asserts that her counsel remained inexplicably uninvolved throughout this exchange and that he was obviously unfamiliar with lodging proper objections to faulty opinion and reputation predicates.

Pursuant to Article 37.07, reputation and opinion testimony is admissible during the punishment phase. Tex.Code Crim.Proc. Ann. art. 37.07, § 3(a)(Vernon Supp.1996). The Rules of Criminal Evidence provide that "to be qualified to testify concerning the character or trait of character of an accused, a witness must have been familiar with the reputation, or with the underlying facts or information upon which the opinion is based, prior to the day of the offense." Tex.R.Crim. Evid. 405. Conceptually, different predicates are required for reputation and opinion testimony. However, because Deishler stated that he did not know Calderon's reputation in Van Horn for being a peaceful and law-abiding person, any delinquency in the predicate is irrelevant. Therefore, any error that

Calderon's counsel committed must be with respect to the opinion predicate.

In response to the State's inquiry as to how long he knew Calderon, Deishler responded that he did not know her that well and that he just "knew who she was and everything." Furthermore, Deishler testified that he knew, or knew of, Calderon over the seven years that he had lived in Van Horn. As inartful as this predicate may be, and notwithstanding the rambling and confused nature of this entire line of questioning, it is sufficient to support an opinion as to Calderon's character for being a law-abiding and peaceful citizen of Van Horn. Calderon's counsel did attempt to interject after Deishler made a statement that sounded like his opinion was based on the criminal acts being tried. However, the court interrupted and set the line of questioning back on course. We fail to perceive any ineffectiveness concerning Deishler's testimony.

■ At another point in its examination of Deishler, the State asked why he felt that it was important to hurry and obtain a search warrant that evening. In response, Deishler stated that because the homecoming football game would soon be over, he felt that Calderon "would probably sell [the packages of heroin.]" The court immediately silenced Deishler, and a bench conference ensued. Afterward, the State resumed by moving on to the next question. The previous question was pursued no further. Calderon points to the fact that her counsel did not object, request an instruction to disregard, or move for a mistrial. Even assuming her counsel's reticence to be delinquent, such an isolated incident is not indicative of ineffective assistance. *See, e.g., Long,* 502 S.W.2d at 141 (holding that an unresponsive answer of a police officer alluding to extraneous offenses does not, standing alone, render counsel ineffective); *Ahmadi v. State,* 864 S.W.2d 776, 785 (Tex.App.—Fort Worth 1993, pet. ref'd).

■ In order to demonstrate that Calderon was a good candidate for probation, her counsel called Sara Mendoza, Calderon's mother, as a witness. Counsel asked Mendoza a single question relating to her eligibility for probation—whether Calderon had ever been convicted of a felony. To this question,

Mendoza answered no. On cross-examination, the State asked Mendoza whether she was aware that Calderon had been convicted for marijuana possession in 1978. Mendoza answered in the negative. Mendoza also testified that she and her daughter did not visit with one another. Calderon asserts that her counsel should have objected to the question about the marijuana conviction and should have addressed it in a motion in limine. Notwithstanding the fact that extraneous offenses are admissible, *see* TEX.CODE CRIM. PROC.ANN. art. 37.07, § 3(a)(Vernon Supp. 1996), this question was appropriate impeachment of a defense witness. *See* TEX. R.CRIM.EVID. 607; *see also McMillian v. State,* 865 S.W.2d 459, 460 (Tex.Crim.App. 1993); *Anderson v. State,* 896 S.W.2d 578, 579 (Tex.App.—Fort Worth 1995, pet. ref'd). Calderon's counsel was not ineffective for failing to object to this evidence.

### The Charge

■ Defense counsel did not object to the proposed charge. Calderon asserts that her counsel was ineffective because he should have requested, or should have objected to the absence of, a "no adverse inference" instruction concerning her election not to testify. A criminal defendant has a right to elect not to testify during the punishment phase of a criminal prosecution, and a right to request that the jury be instructed accordingly. *See Brown v. State,* 617 S.W.2d 234 (Tex.Crim.App.1981). However, a defendant may waive the right to this instruction. *See, e.g., De La Paz v. State,* 901 S.W.2d 571, 578 (Tex.App.—El Paso 1995, pet. ref'd); *Castaneda v. State,* 852 S.W.2d 291, 294–95 (Tex.App.—San Antonio 1993, no pet.). The decision to request a "no adverse inference" instruction is discretionary and a matter of trial strategy. *See Henson v. State,* 734 S.W.2d 119, 120 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). In other words, counsel may have wanted to avoid further emphasis of Calderon's failure to testify when it had been discussed with the jury during voir dire, an instruction had been included in the charge at guilt-innocence, and the jury had been admonished several times during closing arguments at the punishment

phase. This alleged error is not firmly founded in the record, and we find no evidence of ineffectiveness.

■ Next, Calderon complains that her attorney did not timely request that a "beyond a reasonable doubt" instruction with respect to extraneous offenses be included in the charge. Article 37.07 requires that unadjudicated extraneous offenses be "shown beyond a reasonable doubt by evidence." TEX. CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(Vernon Supp.1996). After the jury retired to deliberate, Calderon's counsel requested that the charge be amended to include an instruction that the jury must find that the extraneous offenses were proven beyond a reasonable doubt before they could consider those offenses. This request was refused. After sentence was imposed and the jury was released, counsel again emphasized his concerns with respect to this instruction. He indicated that his failure to timely request the instruction called into question the effectiveness of his representation. He again raised this point in a motion for new trial.

■ The provision requiring that extraneous unadjudicated offenses be shown beyond a reasonable doubt has been referred to as "easily the most perplexing part of the 1993 amendment." 42 GEORGE E. DIX AND ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE 631 (1995). Until recently, Texas courts of appeals were divided on this issue. *Compare Escovedo v. State*, 902 S.W.2d 109, 114 (Tex.App.—Houston [1st Dist.] 1995, no pet.)(requiring an instruction) *with Mitchell v. State*, 892 S.W.2d 213, 216 (Tex.App.—Texarkana 1995), *rev'd and remanded*, 931 S.W.2d 950 (1996). Subsequent to the lower court's determination in the present case, the Court of Criminal Appeals held that the proof of extraneuous offenses beyond a reasonable doubt constituted a jury question, consistent with *Escovedo*. *Mitchell*, 931 S.W.2d at 953–54. However, at the time that Appellant's trial counsel was required to make a decision on this issue, whether a "beyond a reasonable doubt" instruction was required was an unsettled question in our jurisprudence. Failure to follow a procedural point whose requirements are unsettled at the time of trial is not indicative of ineffective assistance standing alone. *See Wenzy v. State*, 855 S.W.2d 52, 57–58 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Saucedo v. State*, 756 S.W.2d 388, 393–94 (Tex.App.—San Antonio 1988, no pet.).

### Final Argument

■ Calderon asserts that the prosecution was essentially given free reign during final argument. She points to five instances in which she claims her attorney was ineffective. For instance, she points to a situation in which the prosecution praised the jury by claiming that "you [the jury] arrested [sic] the person who's a main drug dealer in [Van Horn]." Calderon asserts that this statement was obviously arguing facts outside the record and that her attorney should have objected. It is well settled that proper jury argument must fall within one of four categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 156 (Tex.Crim.App. 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). Placed in its proper context, the State's statement that Calderon was a main drug dealer in Van Horn was a reasonable deduction from the evidence. Immediately prior to making this statement, the State attempted to demonstrate that Calderon was the primary actor of those arrested that night. The attorney for the State demonstrated that it was her house where the criminal activity took place. He reminded the jury that Cabuzuela had testified that Calderon was there with only one other person when he visited Calderon's house and that the others did not show up until he was leaving. Also, the evidence adduced at trial showed that Calderon's house had traffic in front of it indicative of active drug trafficking. Deishler testified that other heroin seized in Van Horn was packaged in the same manner as that seized in Calderon's house. Finally, Cabuzuela testified that he bought drugs from Calderon on numerous past occasions. From this evidence, the jury could reasonably deduce that Calderon was *a* main drug dealer in this

small west Texas community. Failing to object to this statement was entirely within the discretion of the trial counsel. Standing alone, it does not indicate ineffectiveness.

■ In another instance, the State argued that "[t]his is not probably the first time that Ms. Calderon has ever had heroin packaged up in her home—." At this point, Calderon's attorney began to object. The State continued with its statement as he lodged his objection. He finally objected to the statement as being outside the record. The court overruled this objection. Calderon asserts that this objection was "too little, too late." We fail to perceive any error in this, and Calderon's attorney was not ineffective in the manner in which he objected.

■ At still another point, the prosecutor testified as an expert in narcotics. Specifically, the prosecutor stated, "I don't care how pure the drug was and neither should you. The fact is that even if it were only five percent pure, that amount of heroin could string out another person." This comment was in direct response to the argument of Calderon's counsel who had reminded the jury that during voir dire some of them had indicated a willingness to grant probation if the amount of drugs were small. He had attempted to do the arithmetic to demonstrate that the amount of drugs involved in this case was indeed minute compared to the statutory upper limit of twenty-eight grams. Finally, he had asserted that the purity of the drugs seized made the amount even smaller. In response, the State reminded the jury that each hit of heroin seized could achieve its purpose—to induce a high in its user. The State also reminded the jury that the prevention of addiction to highly addictive drugs is one of the primary purposes of our drug laws and that heroin is highly addictive. *Cf. Torres v. State,* 754 S.W.2d 397, 401 (Tex.App.—Corpus Christi 1988, pet. ref'd)(holding that comment during final argument that a lot of people were dying from cocaine use was not error). This statement by the State, though slicing in its delivery, was not erroneous. It was a proper response to argument and was also an effective plea for law enforcement. Defense counsel was not ineffective for failing to object to it.

■ Calderon asserts that the State improperly bolstered its witness, Cabuzuela. Referring to an offense that Cabuzuela had been convicted of and that had been raised during Calderon's cross-examination of Cabuzuela, the prosecutor stated:

> I can tell you that as an attorney who's been licensed to practice in Texas for the last eight years that what Mr. Cabuzuela was placed on probation for was false information to a police officer, which is what he told you, a misdemeanor offense.

He continued:

> We're not talking about a felony of the first degree, which is what you have convicted this woman of. The legislature has said that this offense, this possession with intent to distribute a controlled substance, heroin, is a first degree felony.

Though the prosecutor may be accused of unnecessary grandstanding, he was not improperly bolstering the State's witness. He was responding to argument from Calderon's attorney. At trial, Cabuzuela related that he was a reformed drug addict and that he wanted to do his part to clean up Van Horn. Calderon's attorney elicited from Cabuzuela the fact that he had been placed on probation for false information to a police officer which was a misdemeanor offense. During final argument, Calderon's attorney pointed out that Cabuzuela had been given a second chance through probation and that he was successfully turning his life around. Placed in this context, the State's argument was nothing more than a dramatic attempt to respond to the argument of Calderon's attorney. Therefore, we fail to find the fact that no objection was lodged against this argument indicative of ineffective assistance.

### Comment on Failure to Testify

Calderon complains that during jury argument at the punishment phase, the State made impermissible comments on Calderon's failure to testify. These comments give rise to two different arguments from Calderon: in her first point of error, that her attorney's failure to respond to these comments adequately further demonstrates ineffective assistance of counsel; and, in her second

point of error, that the State's improper jury argument caused incurable prejudice that the trial court's instruction could not cure, requiring reversal. Because these claims are interrelated, we address them together.

Before addressing the allegedly improper jury arguments in the present case, a basic understanding of Texas law with respect to comments on a defendant's failure to testify is necessary: *first,* the effect of such improper comments when an appellant successfully preserves error for review; and, *second,* what a criminal defendant must do to preserve for appellate review error in the form of improper jury argument on a defendant's silence.

*Effect of Improper Prosecutorial
Jury Argument Concerning
a Defendant's Silence*

■■■■■ A prosecutor's comment on a defendant's failure to testify offends both our State and Federal Constitutions. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; *see also Garrett v. State,* 632 S.W.2d 350, 351 (Tex.Crim.App.1982); *Nickens v. State,* 604 S.W.2d 101, 104 (Tex.Crim.App.1980) (Opinion on State's Motion for Rehearing). Such a comment also violates statutory law. TEX. CODE CRIM.PROC.ANN. art 38.08 (Vernon 1979)("[T]he failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."). The language of the comment must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *See Short v. State,* 671 S.W.2d 888, 890 (Tex.Crim.App.1984); *Davis v. State,* 670 S.W.2d 255, 256 (Tex.Crim.App. 1984). From the jury's perspective, the language used must necessarily have referred to the defendant's failure to testify. *See McKay v. State,* 707 S.W.2d 23, 37 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Short,* 671 S.W.2d at 890; *Davis,* 670 S.W.2d at 256. If the remark complained of called the jury's attention to the absence of evidence that only the testimony from the appellant could supply, the conviction must be reversed. *See*

*Losada v. State,* 721 S.W.2d 305, 313 (Tex. Crim.App.1986); *Angel v. State,* 627 S.W.2d 424, 426 (Tex.Crim.App.1982); *Johnson v. State,* 611 S.W.2d 649, 650 (Tex.Crim.App. 1981).

■■■■■ As a general rule, the adverse effect of an improper remark on the defendant's failure to testify during jury argument cannot be cured by an instruction to the jury. *Owen ·v. State,* 656 S.W.2d 458, 459 (Tex. Crim.App.1983); *Cacy v. State,* 901 S.W.2d 691, 704 (Tex.App.—El Paso 1995, pet. ref'd)(restating this general rule in dicta); *Valles v. State,* 817 S.W.2d 138, 140 (Tex. App.—El Paso 1991, no pet.)(applying this general rule). However, this "presumption that an instruction generally will *not* cure comment on failure of the accused to testify ... has been eroded to the point that it applies only to the most blatant examples." *Waldo v. State,* 746 S.W.2d 750, 753 (Tex. Crim.App.1988). The Court of Criminal Appeals has frequently held that an instruction to the jury may cure an impermissible comment. *See, e.g., Long v. State,* 823 S.W.2d 259, 269–70 (Tex.Crim.App.1991)(holding that even if a direct comment were not invited, it was cured by an instruction), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Jackson v. State,* 745 S.W.2d 4, 15 (Tex.Crim.App.)(holding that a comment was at best an indirect remark on the defendant's failure to testify and that it was cured by an instruction), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); *Rougeau v. State,* 738 S.W.2d 651, 669 (Tex.Crim.App.1987)(holding that the comment in question was not a comment on the defendant's failure to testify and that, in any case, the prompt instruction given to the jury cured any harm), *cert. denied,* 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988); *Gardner v. State,* 730 S.W.2d 675, 700 (Tex.Crim.App.1987)(holding that the comment in question could not necessarily be construed to be a comment on the defendant's failure to testify and that any harm was cured by an instruction), *cert. denied,* 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Some current decisions suggest that an instruction may cure, in certain circumstances, even a direct and explicit comment. *See, e.g., Long,* 823 S.W.2d at 269 (finding

that the State did not contest the remark's characterization as an impermissible comment on the defendant's failure to testify, but instead argued that the comment was invited; comment in question was a direct comment on failure to testify); *Bower v. State*, 769 S.W.2d 887, 907 (Tex.Crim.App.1989)(finding that comment on defendant's lack of remorse was cured by instruction), *cert. denied*, 506 U.S. 835, 113 S.Ct. 107, 121 L.Ed.2d 66 (1992). However, the presumption remains that an instruction to disregard does not cure error with respect to direct, and certain indirect, comments on failure to testify. *See De Los Santos v. State*, 918 S.W.2d 565, 570 (Tex.App.—San Antonio 1996, no pet.).

The test employed to determine whether an instruction has cured error is the same one applied to determine whether a trial court erred in overruling a motion for mistrial. Reversible error results from improper prosecutorial argument only where the argument is extreme or manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision. *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *McGee v. State*, 774 S.W.2d 229, 238 (Tex.Crim.App.1989); *Logan v. State*, 698 S.W.2d 680, 682 (Tex.Crim.App.1985); *see also Laca v. State*, 893 S.W.2d 171, 184 (Tex. App.—El Paso 1995, pet ref'd); *Norton v. State*, 851 S.W.2d 341, 345 (Tex.App.—Dallas 1993, pet. ref'd). An instruction will not cure error when the statement is so inflammatory that its prejudicial effect cannot reasonably be cured. *Logan*, 698 S.W.2d at 682. The argument must be examined in light of the entire record, and the probable impact of the statement on the minds of the jurors must be considered. *Hernandez*, 819 S.W.2d at 820; *Logan*, 698 S.W.2d at 682. When gauging the impact of the comment on the jury, the nature and extent of the instruction given must be taken into account. *Davis v. State*, 645 S.W.2d 817, 818–19 (Tex.Crim.App.1983).

*Necessary Procedure to Preserve Improper Prosecutorial Comment on Failure to Testify*

Before an appellate court can evaluate improper prosecutorial jury argument, the er-

ror at issue must be properly preserved. The preceding discussion suggested that in some instances, not even an instruction to disregard from the trial court can cure the prejudice created by an improper prosecutorial comment on a defendant's failure to testify. Until recently, the concept of incurable prejudice as a result of improper jury argument led Texas courts to hold that a criminal defendant could raise on appeal a complaint concerning an improper jury argument where no objection was raised at trial. In theory, the objection would have proven futile because no remedial action by the trial court could have prevented prejudice. *See Romo v. State*, 631 S.W.2d 504, 505 (Tex. Crim.App.1982); *Montoya v. State*, 744 S.W.2d 15, 37 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). However, in *Cockrell v. State*, 933 S.W.2d 73 (Tex.Crim.App.1996), the Texas Court of Criminal Appeals expressly overruled decisions such as *Romo* and *Montoya* to the extent that these cases and their progeny allowed appellants to raise the issue of improper prosecutorial jury argument for the first time on appeal. *Cockrell*, 933 S.W.2d at 89.

In *Cockrell*, the defense counsel in a capital murder trial had introduced the testimony of an expert witness to suggest that the defendant was illiterate and could not have understood the confession he had consented to sign. The prosecution had strongly suggested that defense counsel had paid this witness to lie for them, essentially arguing that defense counsel had suborned perjury. *Id.* at 88–89. Although defense counsel had failed to object, request an instruction, and ask for a mistrial in response to each instance of improper prosecutorial jury argument, on appeal the defendant relied on decisions such as *Gomez v. State*, 704 S.W.2d 770 (Tex.Crim.App.1985) to urge that the prosecution's jury argument constituted incurable error because it had attributed to defense counsel a willingness to suborn perjury. Relying on cases such as *Romo*, 631 S.W.2d at 504, and *Montoya*, 744 S.W.2d at 15, the defendant in *Cockrell* insisted that such incurable jury argument required reversal, whether or not error was preserved in re-

sponse to each improper jury argument. *Cockrell*, 933 S.W.2d at 89.

The *Cockrell* Court rejected the defendant's assessment of the improper jury argument as error that did not require objection, request for instruction, and request for mistrial, citing especially its decision in *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App.1993), and TEX.R.APP.P. 52(a). *Cockrell*, 933 S.W.2d at 89. In *Marin*, the Court of Criminal Appeals described three broad categories of error:

(1) Error that can be raised on appeal without demonstrating compliance with Rule 52(a) at the trial level and which the defendant/appellant cannot waive, even by consent. The *Marin* Court cited only two examples of such non-waivable error: first, jurisdiction, and, second, due process and separation of powers challenges on appeal to a statute under which a defendant was sentenced at the trial level. *Marin*, 851 S.W.2d at 279. (Note that the due process example cited involved a challenge to the constitutionality of a sentencing statute and not due process challenges in general). Subsequent to *Marin*, the Court of Criminal Appeals has also characterized as non-waivable an appeal based on the prohibition against ex post facto laws contained in the United States and Texas Constitutions. *See Ieppert v. State*, 908 S.W.2d 217, 218–19 (Tex.Crim.App.1995).

(2) Error that can be raised on appeal unless the litigant has voluntarily waived the right that was allegedly violated at trial. The *Marin* Court cited the right to assistance of counsel, the right to a jury trial, and the mandatory 10–day preparation time afforded to appointed counsel in TEX.CODE CRIM.PROC. ANN. § 44.33(a)(Vernon 1989 and Supp.1997) as examples of rights that must be affirmatively waived "plainly, freely, and intelligently, sometimes in writing and always on the record." *Marin*, 851 S.W.2d at 280, *citing Goffney v. State*, 843 S.W.2d 583, 585 (Tex.Crim.App.1992). Mere inaction at trial cannot constitute waiver. With respect to this second category of error that can only be waived voluntarily, *see also* TEX.CODE CRIM.PROC. ANN. § 1.14(a)(Vernon 1989 and Supp.1997).

(3) Error that cannot be raised on appeal unless the provisions of TEX.R.APP.P. 52(a) have been complied with at the trial level (error that can be waived by "forfeit" or "procedural default"). The *Marin* Court characterized most forms of error arising from the "myriad evidentiary and procedural rules comprising our system" as belonging in this category, and cited the failure to object to hearsay as one such form of error waived by "procedural default." It is important to note that error subject to the requirements of Rule 52(a) is not only confined to procedural or evidentiary matters, but also to many objections based on the violation of constitutional rights as well. In *Cockrell*, the Court of Criminal Appeals declared that improper prosecutorial jury argument belongs to this third category of error, for which criminal defendants must follow the procedure for objections dictated by TEX.R.APP.P. 52(a). The fact that the jury argument at issue in the present case allegedly violated a defendant's constitutional rights under U.S. CONST. amend. V and TEX. CONST. art. I, § 10 by commenting on the refusal to testify does not alter this requirement. TEX.R.APP.P. 52(a) states as follows:

> (a) **General Rule.** In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

The *Cockrell* Court concluded that the criminal defendant who intends to appeal improper prosecutorial jury argument must make a specific objection, obtain a ruling, and move for mistrial, or else waive the alleged error:

> [A] defendant's 'right' not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it.... [W]e hold a defendant's failure to object to a jury argu-

ment or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal. Any prior cases to the contrary ... are expressly overruled. Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show that he objected and pursued his objection to an adverse ruling.

*Cockrell,* 933 S.W.2d at 89. Where a trial court sustains an objection and offers an instruction to the jury to disregard the improper comment, whatever error may have occurred is deemed to have been waived unless defense counsel requests and is refused a mistrial.

In the present case, the State began its final argument by reminding the jury of the seriousness of the crime and that some of the jurors had indicated in voir dire that they would be reluctant to grant probation for a serious crime. The prosecutor then attempted to point out the absence of mitigating evidence that would tend to support probation. The following colloquy ensued:

MR. JUVRUD: Some of you even indicated that you could consider probation, but you really would have a problem with the minimum on a first degree felony of possession with intent to deliver. You said it really would depend on the facts and it really would have to be an extremely mitigating set of facts.

Did you hear that mitigating circumstance? No, absolutely not.

[DEFENSE COUNSEL]: Your Honor, I object to the—given in that comment that it's reflecting on my client to testify.

MR. JUVRUD: Your Honor, I've never made one mention and nor will I—

THE COURT: Don't consider the last remark, ladies and gentlemen of the jury.

MR. JUVRUD: Ladies and gentlemen, the fact that she did not testify, you cannot consider it in any way, shape or form.

[DEFENSE COUNSEL]: Your Honor, again—

THE COURT: Just go on to some other matter, Mr. Juvrud.

MR. JUVRUD: Yes, sir.

Did you hear from her witnesses anything that showed mitigation from anybody—

THE COURT: I told you to get onto some other matter. Now, go on.

MR. JUVRUD: Your Honor, I believe I'm allowed to question on this.

THE COURT: I am instructing you not to get into what you heard on her behalf one way or the other.

Later in the closing argument, the following occurred:

MR. BYRNE: She hasn't told you or any witness on her behalf has not told you—

[DEFENSE COUNSEL]: Your Honor— Your Honor—

MR. BYRNE: —that she deserves probation.

[DEFENSE COUNSEL]: Objection. Objection.

THE COURT: All right. Now, I have instructed you on this matter and I will instruct you one more time and this is all. If you want a mistrial in this case, that's fine.

MR. BYRNE: I will move along.

THE COURT: You will not—ladies and gentlemen of the jury, you will not consider for anything, for any purpose whatsoever, under any circumstances what she has not [sic] or has not told you.

And don't you do that ever again, not in this trial.

All right.

■ Before we can evaluate whether the prosecutor's comments constituted error, we must first evaluate whether Calderon has preserved error for our review. We conclude that the trial court granted Calderon the relief she requested and that no error is preserved for our review.

First, Calderon complains of the following prosecutorial comment from the above colloquy:

*Did you hear that mitigating circumstance? No, absolutely not.*

Calderon alleges that this comment was made to suggest that the jury had not heard *from Appellant* herself that would cause the jury to shorten her sentence. At trial, defense counsel lodged a specific objection to this remark:

> Your Honor, I object to the—given in that comment that it's reflecting on my client to testify.

The trial court sustained the objection and instructed the jury to disregard the remark. However, after the trial court instructed the jury, defense counsel did not request a mistrial. Per *Cockrell*, the failure to request a mistrial with respect to this first prosecutorial comment waived any error that might have occurred; the trial court granted Calderon all the relief she requested.

Second, Calderon complains of the following prosecutorial remark:

> Ladies and gentlemen, the fact that she did not testify, you cannot consider it in any way, shape or form.

This backhanded comment in response to the trial court's instruction not to comment on the failure to testify, cynically emphasized that Calderon had not in fact testified. Although "there is no error in stating that a defendant does not have to testify," *State v. Howard*, 838 S.W.2d 926, 929 (Tex.App.—Austin 1992, no pet.), the context of this comment makes clear that it was tactical in nature. However, the record reflects that Calderon failed to preserve error with respect to this unacceptable prosecutorial comment. Although an incomplete sentence, Calderon did make an acceptable objection to this remark:

> Your Honor, again—

Tex.R.App.P. 52(a) provides that an objection is deemed sufficiently specific if its basis is clear from its context. Here, defense counsel had just objected specifically to a comment on Calderon's failure to testify and tried to repeat the same objection before the trial court interrupted:

> Just go on to some other matter, Mr. Juvrud.

However, defense counsel failed to request a jury instruction after objecting and failed to request a mistrial from the trial court.

Again, the trial court is deemed to have provided Calderon with all the relief she requested.

Third, Calderon complains of the following prosecutorial remark:

> She hasn't told you or any witness on her behalf has not told you ... that she deserves probation.

Calderon objected to this remark as follows:

> Your Honor—Your Honor ... Objection. Objection.

Calderon made a specific objection because of the context provided by the prosecution's preceding comments on the failure to testify, per Tex.R.App.P. 52(a). However, defense counsel once again failed to request a jury instruction and, more conspicuously, failed to request a mistrial, even after the trial court explicitly invited Calderon to do so. The trial court warned the prosecution as follows:

> All right. Now, I have instructed you on this matter and I will instruct you one more time and this is all. If you want a mistrial in this case, that's fine.

We conclude that the failure to request a mistrial in response to this third comment by the prosecution on the failure to testify served to waive error.

■■■ Despite the failure of defense counsel to preserve error with respect to improper prosecutorial jury argument, we must nevertheless review Appellant's claim that counsel's waiver demonstrates ineffective assistance of counsel. This analysis requires a slightly different approach. While *Cockrell* mandates an objection, request for instruction to disregard, and motion for mistrial, compliance with these prerequisites merely serves to preserve error. At that point, an appellate court must necessarily determine whether an instruction to disregard could have cured the error. Only if the comments are incurable can we reverse. When we undertake to determine the claim of ineffective assistance of counsel, we must address whether in the factual context presented the instruction to disregard cured error. If we find the arguments to be incurable, Appellant's complaints are indeed bolstered. If the instruction by the trial court cured the error, then the converse is true. Consistent

with the requirements outlined in *Cockrell*, we find that the trial court's instructions cured any error that resulted from the prosecution's three comments on Calderon's failure to testify, particularly in light of the nature and extent of the admonishments given. Calderon received sufficient relief. Whether counsel had strategy in mind when he failed to request a mistrial is not apparent from the record, but we can certainly perceive one. Given the clear frustration of the trial court with the prosecution and the trial court's predisposition toward granting a mistrial during final argument, Calderon's failure to request a mistrial was likely a conscious decision to capitalize on possible jury frustration with the State. If Calderon's attorney did in fact make a conscious decision to gamble with the existing jury, his choice may have paid off. The jury returned a sentence at the very bottom of the range requested by the State.

Defense counsel, though perhaps not providing Calderon with a flawless trial, did not deprive her of the constitutional assistance of counsel to which she was entitled. He proved his efficacy on a number of occasions. He filed numerous pretrial motions; he attempted to suppress the heroin seized from Calderon's home; he successfully represented her on her cocaine possession charge. Finally, he lodged numerous objections, most of which were sustained. In light of the entire representation, as it is depicted in the record before us, we find that Calderon's counsel was not ineffective, either at guilt-innocence or at the penalty stage.

## CONCLUSION

While we conclude that Calderon has waived any error that resulted from the prosecution's comments to the jury on her failure to testify, we emphasize that we are distressed with the prosecutorial conduct involved in this case. If the record did not reflect vehement reprimands from the trial court, and its repeated efforts to ensure the administration of justice, we may well have reached a different result. With clear requirements in place concerning the preservation of error in cases involving prosecutorial misconduct, we hope that the protections against infringements on the rights of criminal defendants under U.S. CONST. amend. V and TEX. CONST. art. I, § 10 arising from prosecutorial misconduct will become more effective.

We overrule both points of error and affirm the judgment below.