Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

TRAVIS COKER,
)
 No. 08-02-00014-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 161st District Court

)


THE STATE OF TEXAS,
)
 of Ector County, Texas

)


 Appellee.
)
 (TC# B-28,794)


MEMORANDUM OPINION



 Travis Coker, pro se, appeals from his conviction for aggravated sexual assault of a child. (1) 
Appellant waived his right to a jury trial and entered a plea of not guilty. The trial court found
Appellant guilty and assessed punishment at imprisonment for a term of forty years. We affirm.

FACTUAL SUMMARY


 In 1999, twelve-year-old B.F. lived with T.F., her mother, in Odessa, Texas. Appellant, who
was T.F.'s boyfriend, lived with them. T.F. was pregnant with Appellant's child. (2) B.F. had observed
Appellant hit T.F. during their arguments and he had been arrested for assault and family violence
on several occasions. One weekend between March and May of 1999, B.F.'s mother went to the
store and left her at home alone. Appellant had gone to work earlier that day. Appellant called
around lunchtime and asked to speak to T.F., so B.F. told him that she had gone to the store. 
Appellant hung up. About fifteen minutes later, Appellant arrived at the house and entered B.F.'s
bedroom. Appellant pushed B.F. onto the bed and sexually assaulted her by placing his penis in her
vagina. B.F. fought Appellant but she could not stop him because he was stronger. Appellant told
B.F. that if she told anyone, he would kill her and her mother. Due to her experience with Appellant,
B.F. believed him and she did not immediately report the assault. B.F. later discovered that
Appellant had been watching her through a hole in the wall between her bathroom and bedroom. 

 T.F. recalled that B.F.'s behavior changed during this time period in that she stayed in her
room all of the time and would not eat supper with them. B.F., who had diabetes, became suicidal
and began refusing to take her insulin. To prevent anyone from coming into her room, B.F. also tied
a rope to her bedroom door and nailed it to her closet. T.F. began noticing that when B.F. went into
her room, Appellant would sometimes go into the bathroom adjacent to B.F.'s bedroom and remain
in there with the lights turned off. On one occasion, T.F. walked into the dark bathroom and saw
a ray of light shining through a hole in the wall. T.F. could see through the hole into B.F.'s bedroom. 
Appellant claimed that he was in the bathroom because he had a stomach virus but T.F. got a knife
from the kitchen and threatened to kill Appellant if he ever looked at B.F. or did anything to her. 

 In the year following the assault, B.F. began having increasing health problems. During June
2000, she went to visit her father in West Virginia and while there began experiencing abdominal
pain. A doctor determined that B.F. had genital herpes. B.F. did not tell the doctor or her parents
that she had been raped but instead told them that she had gotten herpes from someone other than
Appellant. She lied to them because she was still afraid of Appellant.

 On October 10, 2000, Appellant assaulted T.F. and was arrested for family violence. As a
result, T.F. obtained an emergency protective order. When T.F. told B.F. about the protective order,
she began questioning her mother whether the order would prevent Appellant from ever being
around them. Later that evening, T.F. heard B.F. crying in her room. T.F. went in the bedroom and
B.F. told her that Appellant had sexually assaulted her. B.F. explained that she felt more
comfortable telling her mother given that a protective order had been issued. B.F. also admitted that
she feared her mother and Appellant might get back together so she wanted to tell her the truth
before that happened.

 After charges were filed against Appellant, T.F. reported to the Ector County Sheriff's
Department that someone in a passing vehicle had fired shots while she was taking out the trash.
Claudia Bretz, an investigator with the Ector County Sheriff's Department, went to the scene. T.F.
had previously filed reports that Appellant was harassing her and she suspected that he had been
responsible for the shots being fired. As Bretz spoke with T.F., Appellant called on the telephone. 
After T.F. spoke with him a few minutes, she indicated that Bretz should get on the other telephone. 
Bretz identified herself to Appellant and he informed her that he was calling about visitation with
his daughter. Appellant, who sounded intoxicated, would not allow Bretz to speak but instead told
her that no law could keep him from visiting his daughter. He also assured Bretz that he would see
to it that T.F. went to prison for the false charges that had been made against him. He volunteered
to Bretz that he did not have anal or vaginal intercourse with B.F. although he had thought about it
several times. Bretz told Appellant that he needed to quit calling T.F. for the remainder of the
evening because it appeared to her that his calls were harassing. She also informed him that T.F.,
who had a temporary protective order, was seeking a permanent protective order. 

 Appellant's mother, Pam Denton, testified that T.F. called her some time after October 12,
2000, and stated that B.F. had accused Appellant of raping her, but T.F. did not believe her. Denton
denied calling T.F. and asking her not to report the allegations. 

 Appellant testified at trial in his own behalf. He was incarcerated from May 31, 1999 until
November 6, 1999 and he was incarcerated on other dates as well while living with T.F. Appellant
had known since 1996 or 1997 that he had genital herpes. Appellant denied sexually assaulting B.F.
and further denied watching her through a hole in the bathroom wall. 

 At the conclusion of the evidence, the trial court found Appellant guilty of aggravated sexual
assault of a child as alleged in the indictment. In seven issues, Appellant challenges the legal and
factual sufficiency of the evidence and contends that he was denied the effective assistance of
counsel at trial.

INEFFECTIVE ASSISTANCE


 In Issues One through Five, Appellant argues that he was denied the effective assistance of
counsel at trial because counsel failed to object to the admission of certain medical records. The
proper standard for determining claims of ineffective assistance under the Sixth Amendment is the
two-step analysis adopted by the United States Supreme Court in Strickland v. Washington, 466 U.S.
668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988 S.W.2d 770, 771-72
(Tex.Crim.App. 1999). Under the first prong, the defendant must show that counsel's performance
was deficient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth
Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). The defendant must
demonstrate that his attorney's representation fell below an objective standard of reasonableness
under prevailing professional norms. Vasquez v. State, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). 
Under the second prong, the defendant must establish that counsel's deficient performance prejudiced
the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Jackson, 877 S.W.2d
at 771. Prejudice is established by a showing that there is a reasonable probability that but for
counsel's unprofessional errors, the result of the proceeding would have been different. Strickland,
466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771; Hernandez v.
State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). A reasonable probability is a probability sufficient
to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d
at 698; Jackson, 877 S.W.2d at 771. Under the Strickland test, the appellant bears the burden of
proving ineffective assistance by a preponderance of the evidence. Jackson, 877 S.W.2d at 771;
Calderon v. State, 950 S.W.2d 121, 126 (Tex.App.--El Paso 1997, no pet.).

 When we review a claim of ineffective assistance of trial counsel, we must indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable, professional assistance
and the appellant must overcome the presumption that the challenged conduct can be considered
sound trial strategy. Jackson, 877 S.W.2d at 771; Calderon, 950 S.W.2d at 126. Under normal
circumstances, the record on direct appeal will not be sufficient to show that counsel's representation
was so deficient and so lacking in tactical or strategic decision-making as to overcome the
presumption that counsel's conduct was reasonable and professional. See Mitchell v. State, 68
S.W.3d 640, 642 (Tex.Crim.App. 2002); Thompson v. State, 9 S.W.3d 808, 814 (Tex.Crim.App.
1999). An appellant challenging trial counsel's performance therefore faces a difficult burden and
"a substantial risk of failure." See Thompson, 9 S.W.3d at 813.

 Appellant filed a motion for new trial but he did not raise any of his complaints regarding
ineffective assistance of counsel. Consequently, the record is silent with respect to the basis for
counsel's decision whether to object to the medical records. For this reason alone, Appellant has
failed to rebut the presumption that counsel's challenged conduct could be considered sound trial
strategy. 

 B.F.'s medical records from Medical Center Hospital in Odessa (MCH) are contained in
State's Exhibit 2 and consist of approximately 200 pages. State's Exhibit 2 contains a three page
report from B.F.'s doctor in West Virginia, Dr. James Brown, who examined her and made a clinical
diagnosis that she had genital herpes. Dr. Kenneth Adams, who participated in the sexual assault
examination of B.F., specifically relied on this report in forming his conclusion that the non-specific
red bumps he found in B.F.'s genital area were caused by the Herpes Simplex Virus (HSV). 
Appellant argues that counsel should have objected because this particular portion of the record is
not admissible under Tex.R.Evid. 803(6) as it is not a medical record created by someone at MCH. 
Regardless of whether Dr. Brown's report was properly admitted as part of State's Exhibit 2,
Dr. Adams could have properly testified to the basis for his diagnosis even though part of the data
he relied on is hearsay. See Tex.R.Evid. 703 (the facts or data relied on by an expert witness need
not be admissible in evidence). Dr. Brown's report is also cumulative of all the other evidence at
trial showing that B.F. had been infected with HSV. Therefore, counsel did not render deficient
performance by failing to object to the inclusion of this report in State's Exhibit 2.

 Additionally, Appellant contends that counsel should have objected on the ground that the
State failed to lay a proper foundation because it did not establish that it was the regular practice of
MCH to make the records. There is no evidence in the appellate record that had trial counsel made
these objections the State would have been unable to meet it. Under Strickland, prejudice is
established by a showing that there is a reasonable probability that but for counsel's unprofessional
errors, the result of the proceeding would have been different. Appellant has failed to prove by a
preponderance of the evidence that the result of the proceeding would have been different had
counsel objected.

 Appellant next faults counsel for failing to object to several pages of medical records
pertaining to a premature baby which were inadvertently included in State's Exhibit 2. These
records are scattered throughout State's Exhibit 2. While these records obviously should not have
been included in B.F.'s medical records, Appellant does not identify how he has been prejudiced by
the mistake.

 Finally, Appellant argues that counsel rendered deficient performance by failing to object to
admission of Appellant's medical records on the ground that the State failed to lay a proper
foundation under Rule 803(6). More specifically, he claims that the State did not elicit from the
custodian that it was the regular practice of the medical provider to make the records or that the
person making the record or submitting the information had knowledge of the events being recorded. 
As was the case with B.F.'s medical records, Appellant has failed to show that the State would have
been unable to establish these elements if counsel had objected. Further, other evidence established
that Appellant had been infected with HSV prior to the sexual assault. Because Appellant did not
carry his burden under Strickland, we overrule Issues One through Five.

SUFFICIENCY OF THE EVIDENCE


 In Issues Six and Seven, Appellant challenges the legal and factual sufficiency of the
evidence to support his conviction because he was incarcerated during the time that the assault
allegedly occurred. 

Standards of Review


 In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). This familiar
standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts.
Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. The jury is entitled to draw
reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89
(Tex.App.--Corpus Christi 1988, pet. ref'd). The jury may use common sense and apply common
knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to
the inferences that may reasonably be drawn from the evidence. Griffith v. State, 976 S.W.2d 686,
690 (Tex.App.-- Tyler 1997, pet. ref'd). We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.

 When conducting a factual sufficiency review, we consider all of the evidence, both
admissible and inadmissible, but we do not view it in the light most favorable to the verdict. Clewis
v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); Levario v. State, 964 S.W.2d 290, 295
(Tex.App.--El Paso 1997, no pet.). We review the evidence weighed by the jury that tends to prove
the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove
that fact. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642,
647 (Tex.Crim.App. 1996). A defendant challenging the factual sufficiency of the evidence may
allege that the evidence is so weak as to be clearly wrong and manifestly unjust, or in a case where
the defendant has offered contrary evidence, he may argue that the finding of guilt is against the great
weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 11. Although we are
authorized to set aside the fact finder's determination under either of these two circumstances, our
review must employ appropriate deference and should not intrude upon the fact finder's role as the
sole judge of the weight and credibility given to any evidence presented at trial. See Johnson, 23
S.W.3d at 7. We are not free to reweigh the evidence and set aside a verdict merely because we feel
that a different result is more reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997);
Clewis, 922 S.W.2d at 135.

Review of the Evidence


 Appellant argues that the evidence is legally insufficient because he was incarcerated from
May 31, 1999 until November 6, 1999 and therefore could not have committed the assault. Taking
the evidence in the light most favorable to the guilty verdict, B.F. testified that the sexual assault
occurred sometime between March and May of 1999. She recalled that it was warm, she was in the
sixth grade and school was still in session. Given that Appellant was not incarcerated until May 31,
1999, the evidence is legally sufficient to support a finding that he committed the assault.

 Turning to the factual sufficiency review, Appellant asserts that the weight of the evidence
showed that the assault occurred in October of 1999 rather than March. B.F. admitted that she was
not entirely sure of the date on which the assault occurred. On cross-examination, defense counsel
asked B.F. whether she had told an interviewer at the Harmony House that the assault took place in
May of 1999. She did not recall stating that during the interview but insisted that the assault
occurred sometime between March and May because the weather was warm and she was in the sixth
grade. Appellant argues that B.F. testified that the assault took place a couple of months after her
thirteenth birthday in August of 1999, but that is a misreading of B.F.'s testimony. She testified as
follows:

 [The prosecutor]: Now, as far as when this happened, you can't really pinpoint a
date, can you?


 [B.F.]: No.


 [The prosecutor]: Why is that?


 [B.F.]: I don't -- because I really don't remember because it has been a long time,
you know.


 [The prosecutor]: Did you take out a calendar and put a special check mark on that
date or something, so that date would be recorded in history?


 [B.F.]: No.


 [The prosecutor]: But tell us about the details that you do remember about how that
-- about that day that makes you feel it was March or May?


 [B.F.]: Because it was warm outside and it was getting close to my birthday. I
remember that, because it was like a couple of months after I had my birthday -- my
13th birthday. And it seems like it was around March or May. [Emphasis added].


 At first glance and taking one sentence out of context, B.F. appeared to testify that the assault
took place after her birthday. But when her testimony is considered as a whole, she plainly stated
that the assault occurred before her birthday. Her statement that "it was like a couple of months after
I had my birthday" appears to mean that "it was like a couple of months after [that] I had my
birthday." Appellant also relies on the testimony of Sergeant Bobby Luffman to show that the
assault occurred in October of 1999. Luffman set up an interview for B.F. at Harmony House. The
interview took place on October 23, 2000. When asked by the prosecutor whether B.F. disclosed
when the assault took place, Luffman responded "approximately a year ago" and "a year before the
interview." He admitted, however, that he did not have any information in his report regarding
whether the offense actually took place in May of 1999. The interviewer, Eve Flores, also testified
that B.F. had delayed disclosing the offense for a year. 

 The evidence regarding when the assault occurred is conflicting but B.F. consistently testified
that it took place sometime between March and May of 1999. Neither Luffman nor Flores attempted
to pinpoint the date of the offense but rather estimated how long B.F. had delayed making a report. 
It was the responsibility of the factfinder to resolve the conflicts in the evidence and weigh the
credibility of the witnesses. Having reviewed all of the evidence under the appropriate standard, we
conclude that the finding of guilt is not against the great weight and preponderance of the evidence. 
Issues Six and Seven are overruled. The judgment of the trial court is affirmed.



May 27, 2004 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Do Not Publish)

1. Appellant was represented by appointed counsel at trial. After being properly and fully admonished by the
trial court, Appellant rejected appointed counsel and insisted on self-representation for purposes of appeal. 
2. The child, a daughter, was born in August 1999.