COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MARVIN DUNN,                                               )                  No. 08-02-00516-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  346th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20020D02148)

OPINION

            Marvin Dunn appeals his conviction for driving while intoxicated. Appellant was found
guilty by a jury and sentenced to eight years’ imprisonment in the Texas Department of Criminal
Justice together with a $500 fine. We affirm.
FACTUAL SUMMARY

            On the evening of April 13, 2002, Veronica Montes entered I-10 at Zaragosa in El Paso. She
was following behind two tractor-trailers and a white minivan for approximately twenty minutes. 
As Montes approached the downtown exit, Trailer No. 1 was in the passing lane and driving
approximately 60 m.p.h. Trailer No. 2 was behind Trailer No. 1. Trailer No. 2 then moved into the
next lane and began weaving in and out and straddling the lanes. Montes backed off because she
thought Trailer No. 2 was going too fast or that something was wrong. Near the Schuster exit,
Montes saw Trailer No. 2 catch up to the white minivan, get really close, and start to depress the
brake lights. Trailer No. 2 then began to change lanes, but the truck was not going to make it
because Trailer No. 1 was in the lane. Trailer No. 2 hit Trailer No. 1 on the front right-hand side. 
Montes saw smoke and changed lanes so that Trailer No. 1 would not hit her, but the driver
controlled the truck and pulled over into the emergency lane. Trailer No. 2 left the scene. Montes
followed it as it continued down the freeway and exited at Executive Center. She wrote down the
license plate number. When the truck proceeded immediately back onto the Interstate, Montes then
turned back and returned to the scene where she gave the driver of Trailer No. 1 the license plate
number. Montes never saw the driver of Trailer No. 2. 
            Angela Sommers, a field supervisor with the El Paso Police Department, heard a spot
broadcast about a hit-and-run accident. She believed that the accident involved two tractor-trailers
and that one had hit the guardrail while the other had fled the scene. Sommers proceeded to the on-ramp at Sunland Park to wait for the vehicle. She was looking for a red Volvo 18-wheeler bearing
Tennessee plates with a white shiny trailer labeled “Volunteer Transport.” Sommers also knew the
license plate number.She spotted the vehicle traveling in the inside lane at a high rate of speed. She
characterized it as driving erratically from the inside lane to the center lane. Other people on the
road were actually fleeing from side to side to get out of the vehicle’s way. The trailer was not
fishtailing but was swaying back and forth. Sommers was running with the lights and sirens
operating and she pulled onto the Interstate behind the vehicle. Although she picked it up at Sunland
Park, it did not pull over until just before the Mesa exit. The vehicle was traveling well over
70 m.p.h. 
            Sommers stopped the truck, notified dispatch, and verified the plates, which matched the
dispatch description. As Sommers approached, the driver, later identified as Appellant, stumbled
out the door and approached her. He was sweating profusely, which Sommers found odd since it
was a cool April night. Appellant seemed nervous and approached Sommers with squared shoulders
as if tense and fearful of the situation. Sommers asked Appellant for his license and insurance and
whether he knew he had been involved in an accident. Appellant responded that he had no clue. 
Sommers observed damage to Appellant’s vehicle around the front right-hand side on the top
bumper area. She also noticed the odor of alcohol. When additional officers arrived at the scene,
she informed them that Appellant might be a drunk driver. The officers then took custody of
Appellant and transported him back to the accident site to see if he could be identified. 
            Officers Adrian Estrada and Juan Ferrel were dispatched to the accident around 11:30 p.m. 
Upon learning that Sommers had apprehended the fleeing truck, they proceeded to assist her. 
Estrada talked to Appellant and told him they were investigating a hit-and-run accident. Appellant
insisted he was not involved in an accident. Estrada examined the truck and found damage to the
rear driver’s side. He saw streaking and scrape marks. The officers then drove Appellant to the
scene of the accident. In transit, they smelled alcohol on him. They described him as jumpy,
nervous, excited, talking, and saying that he was not involved in an accident on the way. His speech
was mumbled, garbled, and thick-tongued. 
            Upon arriving at the scene, Estrada talked to the driver of the other truck and conducted an
investigation. Estrada determined that Appellant had tried to pass the other vehicle driven by Jimbo
Valentic on the emergency shoulder. Appellant couldn’t make it and got on his CB radio to tell
Valentic to let him pass. Appellant then cut back behind Valentic, went into the second or middle
lane, tried to cut Valentic off, and clipped him. Estrada saw damage to the front right side of
Valentic’s truck where the lug nuts had been sheared off. Estrada believed that the damage to the
two trucks was consistent with his findings. Estrada and Ferrel called a STEP unit which arrived
within thirty minutes. Ferrel informed the unit what had happened, and the unit took over. 
            Officer Luis Acosta, a member of the STEP unit, asked Appellant about the accident.
Appellant continued to insist that he had not been in an accident. Acosta detected alcohol on
Appellant’s breath; his eyes were red and watery, he was aggravated, and his speech was slurred and
mumbled. Since Acosta suspected that Appellant was drunk, he asked him to perform field sobriety
tests. Appellant did not tell the officer of any medical ailments, and none was apparent. Acosta
testified that the tests were conducted at night but that there was lighting both from the poles and the
police cars. Acosta conducted three tests including the HGN test, the walk and turn test, and the one-leg stand test. During the HGN test, Acosta observed all six clues. During the walk and turn test,
he observed five out of eight clues. On the one-leg stand, Acosta observed three out of four clues. 
Acosta determined that Appellant was intoxicated at the scene. Appellant was arrested for DWI and
placed in the patrol car. 
            Acosta drove Appellant to the central station downtown and read him the DIC-55, the
commercial vehicle form that is a statutory warning of the consequences of an arrest for DWI when
driving a commercial vehicle. Acosta asked whether he wanted to submit a breath sample. If a
commercial driver blows a .04, then his license is suspended. Appellant did not immediately say yes
and he argued and stalled the officer. When asked again, Appellant finally agreed. Acosta gave him
three opportunities to provide a sample. Appellant would begin giving a sample for three to four
seconds, but then would stop blowing. He pretended to blow with his cheeks puffed out, but Acosta
was able to determine that no air was going into the machine since it was not beeping and the light
was not blinking. All three samples were deficient. A deficient sample is characterized as a refusal,
so Appellant was videotaped. Acosta performed two of the sobriety tests again for the video. On
the video, Appellant stated that he had an inner ear problem. 
            At trial, Socorro Castaneda, a toxicologist for the El Paso Police Department, testified that
she was responsible for testing the intoxilyer machines. Castaneda had checked the machine during
an on-site inspection on April 12 and again on April 27. The machine was working properly both
times.             

PROCEDURAL SUMMARY

            During a pretrial conference on November 1, 2002, defense counsel asked that the State not
mention Appellant’s two prior DWI convictions until the punishment phase. The State argued that
the prior DWIs were elements of the charge which needed to be addressed in the guilt-innocence
portion. The State inquired if Appellant would stipulate to the prior judgments. Defense counsel
responded that the admission of those convictions would be highly prejudicial. The court made the
following statement: 
The way you could do it, if you want to prevent those two prior convictions, sir, is
to stipulate that they are true. And if they -- if they find him driving while
intoxicated, then they don’t come in. Stipulate that they are true and not bring it
before the jury, you try it as a DWI.

Defense counsel answered, “Okay.” The State then argued that it was trying the case as a DWI-third
and that it would need to talk about the prior convictions during voir dire with regard to the range
of punishment. The trial court took the motion under advisement.
            During introductory comments to the venire panel right before trial, the judge advised that
Appellant was charged with driving while intoxicated a third time, explained it was a felony, and
detailed the punishment range. Jurors soon began asking questions. One asked about Appellant
having been charged with DWI for the third time. The trial court responded that the State had to
prove those two prior convictions and that Appellant was intoxicated on this particular occasion. 
Another expressed confusion about the prior two convictions and indicated she was already
assuming Appellant to be guilty. The trial court again explained that while the State had alleged
Appellant had prior convictions, the prosecutor still had to prove it. 
            At this point, defense counsel asked to approach the bench and the waters grew muddy. 
Moving the discussion chambers, the judge said that Appellant had already been given the
opportunity to stipulate to the prior convictions and that obviously he had not. The State responded
that Appellant had indeed stipulated. The stipulation appears to have been signed on November 4,
2002 but not filed until November 7. It did not bear the judge’s signature. 
            The trial court stated: “You didn’t tell me, did you? It’s not on the record anywhere that
there was that stipulation -- is there? You never informed me of that. There’s a mistrial here.” The
State commented that the panel had to know what the charge was and that the questions were
brought up by the panel not by the court. The judge offered to tell the panel that Appellant had
stipulated that the two prior convictions were final. But defense counsel countered that the panel
had already been prejudiced against Appellant. The court asked Appellant whether he wanted the
panel told of the stipulation. Appellant answered no. Upon returning to the courtroom, the judge
noted for the record that he had just received the stipulation but he was not going to read it. 
            Following voir dire, there was another discussion regarding the stipulation. The court asked
Appellant whether he wanted to withdraw his stipulation. Defense counsel answered that Appellant
wanted to keep the stipulation, but with the additional stipulation that there would be no reference
to the prior convictions. He expressed his belief that the State could not bring up the prior
convictions during the guilt-innocence portion of trial if Appellant had stipulated. The prosecutor
replied that if the stipulation was signed and accepted by the court, he would only read the
indictment and announce that there had been a stipulation; he would not introduce the other
convictions unless Appellant opened the door. Defense counsel explained his concern that although
the stipulation was entered into prior to trial, the three DWIs had been referenced in voir dire. He
complained that the jury had already been prejudiced and requested a mistrial. The court inquired
whether defense counsel had told the court about the stipulation, and counsel admitted that he had
not. The court allowed Appellant to withdraw his stipulation and denied the motion for mistrial. 
            At the start of trial, the State read the indictment, including the prior two offenses. During
opening statement, the prosecutor commented that the State would have to prove that Appellant had
been previously convicted twice of DWI. Near the end of the State’s case-in-chief, the court called
a recess and stated that he had told Appellant during pretrial that the only way to exclude his prior
convictions was to stipulate. The judge then commented that he was not aware of a stipulation at
the time of voir dire and that the stipulation handed to him was not dated. The court told Appellant
that before the State proved up the prior two convictions, he had one more opportunity to decide
about the stipulation. Defense counsel rejected the invitation. When the State offered two certified
judgments of Appellant’s convictions, defense counsel had no objection and the judgments were
admitted. 
THE STIPULATION
            In Point of Error No. One, Appellant complains that the trial court denied the stipulation. 
Our resolution of this issue requires that we first address the state of the law with regard to
stipulations in the DWI context. In Hollen v. State, 117 S.W.3d 798, 799 (Tex.Crim.App. 2003),
cert. denied, __ U.S. __, 124 S.Ct. 2022, 158 L.Ed.2d 499 (2004), the defendant was indicted for
felony DWI, and the indictment included allegations of two prior DWI convictions. The defense
offered to stipulate to the prior convictions but claimed that the stipulation should not be mentioned
at all during the trial. Id. His objections were overruled, and the indictment was read along with the
prior conviction allegations. Id. The written stipulation was admitted into evidence and the jury
charge referred to the prior convictions in phrasing the elements of the offense and in giving a
limiting instruction. Id.
            The court first recognized its prior opinion in Tamez v. State, 11 S.W.3d 198, 202-03
(Tex.Crim.App. 2000), in which it held that two prior convictions could be included in the reading
of the indictment to the jury. Hollen, 117 S.W.3d at 801. It acknowledged precedent holding that
the two prior convictions are jurisdictional elements which must be proven to obtain a conviction
for the offense of felony DWI. Id. And it referenced dicta that juries should hear the stipulation. 
Id.; see also Hernandez v. State, 109 S.W.3d 491, 495 (Tex.Crim.App. 2003). The court concluded
that a stipulation is a form of evidence which can be admitted. Hollen, 117 S.W.3d at 802. 
Moreover, the prior convictions are the legitimate subject of voir dire, opening statements, and
closing arguments. Id.
Was There a Valid Stipulation?
            Appellant argues that there was a valid stipulation between the parties because they verbally
agreed in the presence of the court to enter into a stipulation, and the agreement was reduced to
writing and signed on November 4. Appellant also contends that the stipulation did not need to be
approved by either the State or the trial court. Although Appellant frames his issue for review as
error arising from the denial of his stipulation, his briefing reveals that he is actually complaining
about the mention of his prior convictions during voir dire. We will dispose of both issues. 
            We find no error in the reference to Appellant’s prior DWI convictions during voir dire. 
Hollen, 117 S.W.3d at 802. Moreover, it was Appellant, not the trial court, who decided to forego
the stipulation. The State had to admit either a stipulation or the actual judgments from the prior
convictions to satisfy the jurisdictional element of felony DWI. See id. at 801. The State admitted
the judgments. Appellant was asked numerous times by the trial court whether he wished to enter
his stipulation. During voir dire, the parties retired to chambers. The trial court received Appellant’s
stipulation and asked him whether he wanted the court to read the stipulation to the venire panel. 
Appellant answered no. After voir dire was completed, the judge asked Appellant whether he
wanted to withdraw his stipulation. The discussion ended with the judge stating he would allow
Appellant to withdraw his stipulation. Appellant made no objection. Near the end of the State’s
case-in-chief, the trial court again gave Appellant the opportunity to stipulate to his prior convictions. 
Appellant declined. And when the State admitted the judgments of conviction, Appellant did not
object. . 
            Appellant cannot refuse to have the stipulation entered into evidence and then complain about
its erroneous denial. In order to preserve error for appeal, the record must show that the complaint
was made to the trial court by a timely request, objection, or motion that: (a) stated the grounds for
the ruling that the complaining party sought from the trial court with sufficient specificity to make
the trial court aware of the complaint, unless the specific grounds were apparent from the context;
and (b) that the trial court ruled on the request, objection, or motion either expressly or implicitly;
or refused to rule on the request and the complaining party objected to that refusal. Tex.R.App.P.
33.1. Appellant made no complaint regarding the denial of his stipulation or the admission of the
judgments, a fact which he concedes. 
            Instead, he asks that we take notice of fundamental error affecting substantial rights although
the error was not brought to the attention of the court. Appellant argues that remarks made to a jury
panel by the judge, which imparted information to the venire that tainted the presumption of
innocence constituted fundamental error and required no objection. We can perceive no error
inasmuch as prior convictions are a legitimate subject of voir dire. See Hollen, 117 S.W.3d at 802. 
To the extent he argues that the judgments contained information relating to the punishment he
received, and that his probation had been revoked in one case, his failure to object waives error. 
Point of Error No. One is overruled.
MOTION FOR MISTRIAL
            In Point of Error No. Two, Appellant contends the trial judge commented during voir dire
that he did not know Appellant had stipulated to his prior convictions and that “[t]here’s a mistrial
here.” Later, defense counsel expressed his belief that a mistrial was warranted since the jury had
been prejudiced. The court denied the mistrial. 
            The denial of a motion of mistrial is reviewed under an abuse of discretion standard. Trevino
v. State, 991 S.W.2d 849, 850 (Tex.Crim.App. 1999), State v. Gonzalez, 855 S.W.2d 692, 696
(Tex.Crim.App. 1993). To establish an abuse of discretion, the defendant must show he suffered
actual prejudice from the denial of his motion. Vasquez v. State, 67 S.W.3d 229, 240
(Tex.Crim.App. 2002); Wright v. State, 28 S.W.3d 526, 532 (Tex.Crim.App. 2000), cert. denied, 531
U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001). The decision to grant a mistrial is left to the
discretion of the trial court. Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999); cert. denied,
529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). We look at the facts of the case to
determine whether a given error necessitates a mistrial. Id. A mistrial is required only when the
improper statements are clearly prejudicial to the defendant and are of such character as to suggest
the impossibility of withdrawing the impression produced on the minds of the jurors. Id.; Hardin
v. State, 20 S.W.3d 84, 93-94 (Tex.App.--Texarkana 2000, pet. ref’d)(summarizing factors in
determining cure). A mistrial will not be granted during voir dire unless the statement complained
of injects injurious and prejudicial matters before the panel which are reasonably calculated to
prevent a fair trial before an impartial jury. See Pennington v. State, 353 S.W.2d 451, 452 (Tex.
1962). Error in admitting improper evidence may be corrected by a withdrawal and an instruction
to disregard it except in extreme cases where evidence is clearly calculated to inflame the mind of
the jury and suggests the impossibility of withdrawing the impression produced on their minds. 
Waldo v. State, 746 S.W.2d 750, 752 (Tex.Crim.App. 1988). 
            Appellant maintains that the communication about the stipulation was muddled and that the
loss of the stipulation’s benefit was exacerbated by the State’s failure to proffer the stipulation to the
court in a timely fashion. He further suggests that the State intended to manipulate the situation in
such a way as to place the previous convictions before the jury in a conspicuous and prejudicial way. 
He argues that the court’s comments conveyed its opinion of the case on a pivotal issue and that the
court’s extensive voir dire raised an issue as to whether the judge overstepped his role as a referee.
Finally, Appellant claims that every panelist heard inadmissible evidence about his prior convictions
which irrevocably prejudiced his chances of receiving a fair trial. We disagree. Since prior
convictions are a legitimate subject of voir dire, Appellant could not have been prejudiced or denied
a fair trial by the judge’s mention of them to the panel. See Hollen, 117 S.W.3d at 802. Finding no
abuse of discretion, we overrule Point of Error No. Two.
PROSECUTORIAL MISCONDUCTIn Point of Error No. Three, Appellant asserts that the prosecutor’s conduct deprived him of
a fair trial. He complains that the improper conduct spanned the entire trial but began with his
withholding the stipulation until after voir dire had begun. In doing so, he continues, the prosecutor
prevented the trial court from knowing about the stipulation, which resulted in the court’s injection
of considerations of prior offenses into the case. Further, the prosecutor allegedly misstated the law
when he said that the prior convictions would have to come in one way or another and that the
previous convictions were emphasized in the State’s closing argument. Finally, Appellant argues
that the prosecutor’s intentional use of his prior convictions inflamed and prejudiced the jury and
resulted in an inherently unfair trial.
            As we have already detailed--and as the prosecutor correctly explained--the existence of two
prior convictions are jurisdictional elements of felony DWI. Hollen, 117 S.W.3d at 801. The State
has to prove that the defendant has been convicted on two previous occasions in order to obtain a
conviction. Id. Thus, the State must present evidence of these prior convictions through either a
stipulation by the defendant or through admitting the judgments of conviction during trial. See id. 
If the evidence is to be proved by stipulation, the stipulation itself is evidence which can be
submitted to the jury. And the prior convictions can be mentioned during voir dire, opening
statements, and closing arguments. Id. at 802. Therefore, regardless of whether Appellant had
stipulated to his previous offenses prior to trial, the prior convictions could still be mentioned during
voir dire and closing arguments. See id. Finding no prosecutorial misconduct, we overrule Point
of Error No. Three.

INEFFECTIVE ASSISTANCE OF COUNSEL 
            In Point of Error No. Four, Appellant argues that he received ineffective assistance from his
trial counsel and original appellate counsel. 
Standard of Review
            The proper standard for determining claims of ineffective assistance under the Sixth
Amendment is the two-step analysis adopted by the United States Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988
S.W.2d 770, 771-72 (Tex.Crim.App. 1999). Under the first prong, the defendant must show that
counsel’s performance was deficient, to the extent that counsel failed to function as the “counsel”
guaranteed by the Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).
The defendant must demonstrate that his attorney’s representation fell below an objective standard
of reasonableness under prevailing professional norms. Vasquez v. State, 830 S.W.2d 948, 949
(Tex.Crim.App. 1992). Under the second prong, the defendant must establish that counsel’s
deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80
L.Ed.2d at 693; Jackson, 877 S.W.2d at 771. Prejudice is established by a showing that there is a
reasonable probability that but for counsel’s unprofessional errors, the result of the proceeding would
have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877
S.W.2d at 771; Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). A reasonable
probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771.
            When we review a claim of ineffective assistance of trial counsel, we must indulge a strong
presumption that counsel’s conduct falls within the wide range of reasonable, professional assistance
and the appellant must overcome the presumption that the challenged conduct can be considered
sound trial strategy. Jackson, 877 S.W.2d at 771; Calderon v. State, 950 S.W.2d 121, 126
(Tex.App.--El Paso 1997, no pet.). An appellant challenging trial counsel’s performance therefore
faces a difficult burden and “a substantial risk of failure.” See Thompson v. State, 9 S.W.3d 808, 813
(Tex.Crim.App. 1999). Allegations of ineffectiveness of counsel must be firmly founded in the
record. Hawkins v. State, 660 S.W.2d 65, 75 (Tex.Crim.App. 1983), cert. denied, Hawkins v.
Collins, 506 U.S. 1089, 113 S.Ct. 1147, 122 L.Ed.2d 498 (1993); Calderon, 950 S.W.2d at 126.
Under the Strickland test, the appellant bears the burden of proving ineffective assistance by a
preponderance of the evidence. Jackson, 877 S.W.2d at 771; Calderon, 950 S.W.2d at 126.
Trial Counsel’s Lack of Preparation
            First, Appellant alleges that trial counsel did not properly prepare for trial because he failed
to research felony DWI law and he relied entirely on the police report for the testimony of witness
Veronica Montes. Appellant contends that counsel’s actions were not within the realm of reasonable
trial strategy because he was not aware of the option of stipulating until informed by the prosecutor. 
            It is evident that a criminal defense lawyer must have a firm command of the facts of the case
as well as governing law before he can render reasonably effective assistance of counsel. Ex parte
Ybarra, 629 S.W.2d 943, 946 (Tex.Crim.App. 1982); Ex parte Duffy, 607 S.W.2d 507, 516
(Tex.Crim.App. 1980), overruled on other grounds, Hernandez v. State, 988 S.W.2d 770
(Tex.Crim.App. 1999). A natural consequence of this notion is that counsel has the responsibility
to seek out and interview potential witnesses. Ex parte Duffy, 607 S.W.2d at 517. It may not be
argued that a given course of conduct was within the realm of trial strategy unless and until the trial
attorney has conducted the necessary legal and factual investigation which would enable him to make
an informed rational decision. Id. at 526. Counsel has a duty to bring to bear such skill and
knowledge as will render the trial a “reliable adversarial testing process.” Strickland, 466 U.S. at
688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. In Ex parte Lilly, 656 S.W.2d 490, 493-94
(Tex.Crim.App. 1983), the court found ineffective assistance of counsel because the record showed
that at the time of the trial, trial counsel knew nothing about the facts of the case, had not consulted
with the applicant about the case, did not review the prosecuting attorney’s file, and had done no
independent investigation or preparation for trial. The court found that since trial counsel had less
than five minutes to prepare for trial, he was unable to investigate the scene of the offense, interview
and investigate the State’s witnesses, or properly review the enhancement paragraphs. Id. at 493.
            Here there is no evidence that counsel was unprepared. While we agree that there was
confusion over the handling of the stipulation, at the time of trial in 2002, the state of the law was
still somewhat in flux. Although Tamez was issued in 2000, Hollen did not issue until 2004. The
progression in analysis meandered through our own decisions in Martinez v. State, No. 08-00-00094-CR (Tex.App.--El Paso August 2, 2001, no pet.)(not designated for publication) 2001 WL 871687
and Orona v. State, 52 S.W.3d 242 (Tex.App.--El Paso 2001, no pet). Specifically, the admissibility
of the stipulation and the propriety of its use in voir dire and closing statement were not clear cut. 
Compare Orona with Hollen v. State, 87 S.W.3d 151 (Tex.App.--Fort Worth 2002), rev’d, 117
S.W.3d 798 (Tex.Crim.App. 2003), cert. denied, __ U.S. __, 124 S.Ct. 2022, 158 L.Ed.2d 499
(2004). Accordingly, we find counsel’s conduct falls within the realm of reasonable trial strategy.
            We next address the testimony of Veronica Montes. In his motion for new trial, Appellant
alleged that her testimony at trial was materially different from her testimony in the police report. 
The testimony differed regarding whether she was being tailgated by Appellant’s vehicle or whether
she was behind his vehicle. Trial counsel had an opportunity to effectively cross-examine Montes
and explore the differences in her statement to police and her testimony at trial. In fact, counsel
questioned her specifically about whether she was in front of or behind Appellant’s truck that
evening. In so doing, counsel brought the inconsistencies in her statements to the jury’s attention. 
Appellant has failed to show that trial counsel’s conduct fell below the objective standard of
reasonableness under prevailing professional norms.Failure to Preserve Error
            Next, Appellant complains that his trial counsel failed to object during voir dire at the first
mention of his prior convictions and that he failed to challenge the prosecutor’s withholding of the
stipulation until after objectionable information had reached the panelists. He concludes that counsel
effectively waived his appellate issue as to the denial or withdrawal of the stipulation by failing to
object. 
            As the Court of Criminal Appeals has clarified, prior convictions can be mentioned during
voir dire, opening statements, and closing arguments. Hollen, 117 S.W.3d at 802. Thus, counsel
could not have been ineffective for failing to object. Regarding the denial and withdrawal of the
stipulation, Appellant’s prior convictions could have been proven through a stipulation or through
the admission of the judgments. Id. at 801. Requiring the State to prove up the convictions falls
within the realm of reasonable trial strategy.Punishment Evidence
            Appellant next complains that counsel failed to use Appellant’s health problems in presenting
evidence at the punishment phase of trial. He contends that his illness was mentioned in passing
during sentencing but was not placed before the jury at punishment and there was no indication that
the matter was investigated by counsel at all. In support of his argument, he directs us to Justice
Price’s dissent in Ex parte Brewer, 50 S.W.3d 492, 494 (Tex.Crim.App.), cert. denied, Brewer v.
Texas, 534 U.S. 955, 122 S.Ct. 356, 151 L.Ed.2d 269 (2001). There, trial counsel did not justify his
complete failure to investigate Brewer’s mental condition in preparation for trial. Counsel had
claimed that nothing about his client’s behavior caused suspicion about his mental health status, but
Brewer had been committed to a mental hospital for severe depression only three months before the
instant offense occurred. Id. 
            A review of the record reveals that Appellant may have had some problems with his inner
ear and with his liver, not mental health issues which may give rise to considerations of competency. 
We fail to see how Brewer is analogous. Thus, we must presume that trial counsel was acting
within the reasonable realm of trial strategy.
Filing of Motion for New Trial
            Finally, Appellant asserts that his original appellate counsel offered him no assistance in
filing his pro se motion for new trial. Appellate counsel filed a motion to withdraw based on Rule
1.15 of the Texas Rules of Disciplinary Procedure in which he advised that his relationship with
Appellant was strained and he could no longer zealously represent him. Moreover, Appellant had
requested that counsel withdraw. Appellant has failed to show that counsel’s conduct in
withdrawing for ethical reasons constituted ineffective assistance of counsel. Point of Error No. Four
is overruled in its entirety.
FACTUAL SUFFICIENCY
            In Point of Error No. Five, Appellant challenges the factual sufficiency of the evidence to
support his conviction because (1) Montes failed to identify him or describe the vehicle he was
driving; (2) no witness identified Appellant as the person involved in the accident, and (3) there was
a lack of objective indicators that Appellant was intoxicated at the time of his arrest.
Standard of Review
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997).
Applicable Law 
            A person commits the offense of driving while intoxicated if the person is intoxicated while
operating a motor vehicle in a public place. Tex.Penal Code Ann. § 49.04(a)(Vernon 2003);
Tex.Penal Code Ann. § 49.09(c)(Vernon Supp. 2004). The Texas Penal Code defines
“intoxication” as: (a) not having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or
more of those substances, or any other substance into the body; or (b) having an alcohol
concentration of 0.08 or more. Id. at § 49.01(2)(A)(B). An offense of driving while intoxicated is
a third-degree felony if it is shown on the trial of the offense that the person has been previously
convicted twice of another offense relating to the operation of a motor vehicle. Id. at § 49.09(b). 
Identification of Appellant as Driver in Accident
            Appellant argues that neither Montes nor any other witness could identify him as the driver
of the truck involved in the accident. He complains that the State did not call Valentic as a witness
to verify that a license plate number was obtained or to identify him as the driver. Moreover, he
argues that the damage to the vehicles failed to substantiate that his truck was involved in the
accident. He concludes that since none of the evidence actually placed him at the scene until after
his arrest, the evidence had no bearing on his ability to function on the roadway that evening. In
short, he claims that the accident and his arrest were not connected. 
            While Montes could not identify him as the driver, Officer Sommers testified that she was
looking for a red, Volvo eighteen wheeler with a shiny white trailer with “Volunteer Transport” on
it. The vehicle that she pulled over matched this dispatch description. Officers Estrada and Ferrel
had received the same dispatch and also described Appellant’s truck as meeting the description. 
Sommers, Estrada, and Ferrel all identified Appellant as the driver of the truck. No other individual
was present at the scene. 
            There was conflicting evidence about the damage to Appellant’s truck. Sommers testified
that the damage was located on the front right-hand side of the top bumper. Estrada and Ferrel found
damage to the rear driver’s side. The jury as the finder of fact was entitled to be the judge of witness
credibility and believe whatever testimony it chose. See Chambers, 805 S.W.2d at 461. 
When Appellant Was Tested for Sobriety
            Appellant also argues that the evidence did not establish when he was field tested for sobriety
and that the testing thus did not prove that he was impaired by alcohol when he was driving. We
disagree. There were many indicators of intoxication present. Sommers spotted the vehicle traveling
in the inside lane at a high rate of speed. She characterized the vehicle as driving erratically, going
from the inside lane to the center lane, and moving people out of its way. Other people on the road
were actually fleeing from side to side to get out of the way. When he was pulled over, Appellant
stumbled out of the door and approached the officer. He was sweating profusely, and seemed
nervous. Sommers also noticed the odor of alcohol. 
            Officers Estrada and Ferrel were dispatched to the scene around 11:30 p.m. and went to mile
marker 12 where Appellant was apprehended The officers took over and transported Appellant back
to the scene of the accident. In transit, they smelled alcohol on Appellant. They described him as
jumpy, nervous, excited, talking, and saying that he was not involved in an accident. His speech was
mumbled, garbled, and thick-tongued. The officers testified that they were not at the place where
Appellant was apprehended for more than five minutes. Upon completion of their investigation, the
officers called the STEP unit, which arrived within thirty minutes. Officer Acosta, STEP unit
member, detected alcohol on Appellant’s breath; his eyes were red and watery; he was aggravated,
and his speech was slurred and mumbled. Since Acosta suspected that Appellant was drunk, he
asked him to perform the field sobriety tests. Appellant failed all three sobriety tests. Appellant was
taken to the station and submitted three deficient breath samples at 12:52 a.m., 12:59 a.m., and 1:06
a.m. Contrary to Appellant’s contention, the record indicates that he performed the sobriety tests
between 12 a.m. and 1 a.m. 
            Citing Weaver v. State, 721 S.W.2d 495, 498-99 (Tex.App.--Houston [1st Dist.] 1996, pet.
ref’d) and McCafferty v. State, 748 S.W.2d 489, 490 (Tex.App.--Houston [1st Dist.] 1988, no pet.),
overruled by, Gardner v. State, 2002 WL 576073 (Tex.App.--Houston [14th Dist.] 2002, no pet.),
Appellant maintains that indications the accused was intoxicated at the time the police arrived do
not prove intoxication when the accused was driving. Evidence of Appellant’s intoxication is
abundant and stems from the testimony of Officer Sommers, who personally observed his erratic
driving, and Officers Estrada and Ferrel, who arrived at the scene within minutes of his
apprehension. Viewing the evidence in a neutral light, we find that the proof of Appellant’s guilt
is not so obviously weak as to undermine our confidence in the jury’s determination and that the
evidence is factually sufficient to show Appellant’s identity as the driver and that he was intoxicated
both at the time of the accident and when apprehended. We overrule Point of Error No. Five and
affirm the judgment of the trial court.


August 19, 2004                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 1
Larsen, McClure, and Chew, JJ.

(Do Not Publish)