**Opinion issued December 19, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

——————————————

## NO. 01-12-00560-CR

——————————————

## ABNER ELIUD CISNEROS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 209th District Court
Harris County, Texas
Trial Court Case No. 1303506

## MEMORANDUM OPINION

Abner Cisneros was convicted of aggravated assault;[1] the jury assessed punishment at 16 years' confinement. In two issues, Cisneros argues that he received ineffective assistance of counsel because his attorney elected to forego an

---

[1] TEX. PENAL CODE ANN. § 22.02 (West Supp. 2013).

opportunity for a mistrial after a State's witness violated the trial court's order granting Cisneros's motion in limine. We affirm.

## Background

Cisneros was accused of repeatedly shooting a gun at a vehicle owned by Jose Delacruz as their two vehicles traveled down Tidwell Road just after 2 a.m. According to Delacruz, Cisneros was a passenger in the back seat of a grey Impala and, as Delacruz's vehicle approached the other vehicle, Cisneros leaned out of the back, driver-side window holding a 9 mm gun, yelled at Delacruz, then began shooting. Delacruz counted nine shots; three hit Delacruz's vehicle. No one was injured.

Delacruz testified that he and Cisneros knew each other before the shooting. Delacruz said that Cisneros always seemed to have a problem with him, though Delacruz stated that he did not know the reason for the animosity. Delacruz testified about two prior incidents in which Cisneros approached him, "trying to fight and stuff." Delacruz said he always "just tried to walk away from him" when this occurred.

Delacruz testified he returned home after the shooting and went to sleep without notifying the police. When he awoke, he told his mother what happened and decided to report the shooting. The responding officer took Delacruz's statement but, by his own testimony, did no follow-up investigation. Thus, the only

evidence at trial linking Cisneros to the shooting was the testimony of Delacruz and the passenger in Delacruz's vehicle that night, Michael Medina. Both identified Cisneros as the person yelling at them through the window while displaying a gun.

Another police officer—who was not the officer who responded to the call—also testified. Only nine questions into his direct examination, the officer violated the trial court's order granting a motion in limine which required the State to not "mention, reference or attempt to elicit in any manner, evidence suggesting that Mr. Cisneros is affiliated with a street gang, during its case in chief." The exchange was as follows:

> STATE: At what point did you become involved with this case?
>
> WITNESS: My Sergeant asked me to take it over.
>
> [Court states that question calls for hearsay.]
>
> STATE: Okay. Just go straight to what investigation?
>
> WITNESS: Complainant had told the officer that responded to the call that the defendant was a gang member.

Defense counsel immediately objected. A discussion at the bench ensued without the jury present. The trial judge made clear that the statement violated the court's ruling and offered to the defense a choice between seeking a mistrial or proceeding

3

with a very stern instruction to the jury to disregard the statement. In doing so, the trial court intimated that the case was going well for the defense:

COURT: I'm going to leave it up to you. You've got a pretty good case to tell you the truth. Based upon Mr. Delacruz' testimony, you may want to go forward with me giving the jury strong, and I would, probably give the strongest instruction in this courthouse, as far as not in any way, either individually or discussing this as a whole with the rest of the members of the jury about what was said. And a lot of people say you can instruct them all you want, but they are going to consider it by themselves. Others I talk to afterwards, they assure me they did not discuss or consider it themselves after given that stern warning, but I'm going to leave it up to you. It was violated. It was an agreement between all of us. You can either continue it with me giving a very, very strong instruction or you may ask for a mistrial . . . I'm going to leave it up to you. It is your call.

COUNSEL: As tempting as it is, it's tainted.

Defense counsel then asked if the court would agree to giving an instruction that the shooting was not "a gang related crime." The prosecutor agreed to "stipulate just for the purpose of the facts of this case that this is not an issue of gang violence." After a discussion about the lack of relevance or need for more testimony from the police officer, the State agreed the officer who violated the court's ruling on the motion in limine would not testify further.

Before proceeding, the trial court reiterated its offer:

COURT: [T]he Court is going to bring the jury back and instruct them in very strong language. Have y'all changed your mind?

4

COUNSEL: If we could have one more minute.

COURT: And talk to Mr. Cisneros and see what he wants to do.

At which point, the court reporter's record reads:

(Defense counsel and Defendant consulting.)

The conversation continued:

COUNSEL: We will go forward.

COURT: The Court is going to bring them back and instruct them that we all agree, the State, the Defense, and the Court agree this is not a gang affiliation type incident in any way and then I will go in with a strong instruction.

. . . [I]f you object, the Court may very well grant your objection.

COUNSEL: And grant us a mistrial.

COURT: Right. You've already objected to what was said. The Court is going to go ahead and instruct them. And is that agreeable to you rather than ask for a mistrial?

COUNSEL: Yes, at this point, I think we've all worked really hard, the Court, the attorneys, we will just go forward.

The trial proceeded with the court giving a very strongly worded instruction to the jury, which included the following admonishments:

[The officer] said something that has absolutely nothing, and I do mean nothing, to do with this case that we are listening to. This case in no way, and I mean no way, it's agreed by the State, the Defense, and the Court, in any way involves any gang affiliation, gang activity

5

in any way . . . I instruct you as strongly as I can possibly instruct you, you will not, and I mean not, in any way mention what [the officer] said because it has absolutely nothing to do with this case at all back there while you're deliberating . . . nor you will take into consideration individually on what your verdict will be. Gang affiliation, throw it out the window, has nothing to do with this case . . . . I can't get any stronger than this. So please, we can't do it . . . . [C]ertainly nobody is going to bring it up in deliberations. If anyone does, you stop them right there and let me know and I'll declare a mistrial, but I need to know from you right now, do some soul searching and I do mean some soul searching right now because we want a fair trial for both sides.

The trial court went further and expressly asked the jurors to tell the court if they could not follow his instruction:

Is there anyone who could not put it out of their mind? Anyone among you? Good. I certainly trust that you will not do so. That has nothing to do with this case at all. Thank you.

Trial continued with testimony from a third police officer and Medina, who was driving Delacruz's vehicle and also witnessed the shooting.

The jury found Cisneros guilty of felony aggravated assault for shooting at Delacruz's vehicle. During the punishment phase, the jury was informed of a prior conviction for felony burglary of a habitation, for which Cisneros had been assessed punishment of two years' confinement. Cisneros plead guilty to the enhancement paragraph. The jury assessed punishment for the felony aggravated assault conviction at 16 years' confinement.

Cisneros appeals, arguing he had ineffective assistance of counsel due to his attorney's decision not to pursue the mistrial, which the trial court had indicated at the time would be granted, if requested.

**Standard of Review**

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, which dictates that a defendant is entitled to "reasonably effective assistance." 466 U.S. 668, 687 (1984). A defendant is not, however, ensured "errorless counsel or counsel whose competency is judged by hindsight." *Calderon v. State*, 950 S.W.2d 121, 126 (Tex. App.—El Paso 1997, no pet.).

*Strickland* requires a two-step analysis: a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. 466 U.S. at 687–94; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance is within a wide range of reasonable

professional assistance and trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. Cisneros has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *Jackson v. State,* 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Additionally, allegations of ineffectiveness of counsel must be firmly rooted in the record. *Thompson*, 9 S.W.3d at 814; *Bone v. State*, 77 S.W.3d 828, 835 & n.13 (Tex. Crim. App. 2002). When the record is silent, we may not speculate to find trial counsel ineffective. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined and will not conclude that the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 440.

**Action by Cisneros's attorney can be viewed as reasonable trial strategy**

In two issues, Cisneros argues that he was harmed by ineffective assistance of counsel when his attorney chose to forego a mistrial, thereby permitting the jury to decide his fate armed with information indicating that he was a gang member. He states, "No competent counsel would have taken the risk that testimony that his

client was a gang member would not have prejudiced his client . . . No reasonable trial strategy exists to justify the trial counsel's conduct; accordingly, her performance falls below an objective standard of reasonableness as a matter of law." We disagree.

When presenting Cisneros the choice of a mistrial or a strongly worded instruction, the court said, "You've got a pretty good case to tell you the truth. Based upon Mr. Delacruz' testimony, you may want to go forward with me giving the jury strong, and I would, probably give the strongest instruction in this courthouse." From this statement, it would be reasonable to conclude that the trial was going well for Cisneros up to that point. Delacruz had testified already. Through inadvertence of the prosecutor or otherwise, Delacruz failed to identify Cisneros in the courtroom as the person who shot the gun. Likewise, Delacruz failed to indicate the date of the assault or testify that he did, in fact, have "fear based on the gun itself." Moreover, the defense was able to impeach Delacruz on prior inconsistent statements regarding his history with Cisneros. Delacruz also testified that he was "ducked down" and "didn't even get to see anything because my head was on the ground when the bullets went off . . . ," potentially raising some doubt whether Cisneros was the shooter. Lastly, Delacruz admitted he had been drinking shortly before the shooting, stating he had "three or four drinks" and "a little buzz."

Medina, who was the only other witness to the shooting had not yet testified; it was unclear whether his testimony would correct the shortcomings of Delacruz's testimony.

Perhaps as a result of the deficiencies in the State's case thus far, the trial court said that "[b]ased upon Mr. Delacruz' testimony" the defense may want to continue with a jury instruction instead of a mistrial. He left that choice to Cisneros and his attorney to make. After they discussed the options and she obtained a favorable stipulation, Cisneros's attorney stated they would proceed with the trial.

Consistent with the trial court's assessment of Delacruz's testimony, Cisneros moved for a directed verdict highlighting the deficiencies in Delacruz's testimony after the State rested. That motion was denied.

The purpose of *Strickland*'s first prong is to obviate the prejudicial effect of hindsight. *See, e.g., Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993) (en banc) ("A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time."), *cert. denied*, 510 U.S. 840 (1993). Trial counsel's decision to forgo a mistrial and proceed with a strongly worded instruction may constitute a sound and plausible trial strategy under these facts. *See Calderon v. State*, 950 S.W.2d 121, 139–40 (Tex. App.—El Paso 1997, no writ) (concluding that defense counsel's

failure to seek mistrial, in light of court's statements indicating mistrial was likely to be granted, did not constitute ineffective assistance of counsel because conceivable trial strategy existed to support "conscious decision to gamble with the existing jury"); *see also Delrio v. State*, 840 S.W.2d 443, 446–47 (Tex. Crim. App. 1992) (en banc) (holding that an "undoubtedly risky" trial strategy that ultimately does not pay off is not necessarily unacceptable or unreasonable).

Cisneros's counsel could have reasonably believed the errors made during Delacruz's testimony were to her client's advantage and might not happen again on re-trial in front of a second jury. Likewise, counsel may have expected the jury to react favorably to the defense's questioning of the investigating officer who admitted he did nothing to investigate the crime other than interview Delacruz. Additionally, she may have reasonably believed that the court was likely to grant the directed verdict she later sought based on Delacruz's deficient testimony. Further, Cisneros was involved in the jury selection and he and his counsel observed the jury's demeanor thus far. They reasonably could have thought that this jury was likely to rule favorably while a new jury empaneled after a mistrial would have been an uncertainty. *Cf. Calderon*, 950 S.W.2d at 139–40 (counsel made "conscious decision to gamble with the existing jury"). Finally, Cisneros's counsel may have believed that Cisneros would benefit from the trial court's strongly worded instruction as well as from the trial court's expression of

11

frustration with the State for even calling the second police officer, who had no substantive information for the jury.[2]

It was not unreasonable for counsel to conclude that proceeding with an instruction was better than allowing the State another opportunity at a new trial to present Delacruz's testimony, particularly considering the trial court's assurance that the instruction would be very strongly worded. *See Austin v. State*, 222 S.W.3d 801, 816 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (noting appellate presumption that jury will follow court's instruction to disregard improper testimony). In fact, a strongly worded jury instruction has been held to support the conclusion that the failure to seek a mistrial did not result in ineffective assistance of counsel. *See Calderon*, 950 S.W.2d at 140 (noting that instruction cured prosecutor's error and holding defense counsel's failure to seek mistrial did not result in ineffective assistance of counsel).

From this record, we cannot conclude that trial counsel's decision to accept what was promised to be a strongly worded instruction over the unknown that would result from re-trying the case to another jury with possibly stronger State

---

[2]   COURT:   Why was this officer called in the first place?
       STATE:   Judge, he just was the, after the initial responding officer, he was the first officer to conduct any kind of investigation really. He didn't add much to the investigation.
       COURT:   Then don't call  him. I mean, you're just opening up to exactly what the position we are in right now.
       STATE:   That's fine. We can just end his testimony.

witnesses was "so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d at 440. Accordingly, we hold that electing to proceed with trial instead of requesting a mistrial was a reasonable trial strategy under these circumstances.

## Counsel's statement made when electing to proceed with an instruction did not make representation ineffective

As part of his ineffective assistance of counsel challenge, Cisneros complains of a comment made by his counsel when electing to proceed with a jury instruction instead of a mistrial. His counsel stated that, "at this point, I think we've all worked really hard, the Court, the attorneys, we will just go forward." Cisneros argues that "[c]ounsel's choices should be made for the benefit of their client, and not for their own convenience, nor even for that of the court" and, "certainly, no competent counsel would have exposed the client to that risk merely because it did not want to have wasted the attorneys' and the court's time."

Cisneros's argument requires us to consider more than the reasonableness of forgoing a mistrial under the circumstances because he claims his attorney revealed an improper basis for her decision: "I think we've all worked really hard, the Court, the attorneys, we will just go forward." Cisneros argues this is affirmative evidence that his attorney was not choosing to proceed based on a reasonable trial strategy but, instead, for her own convenience.

13

We do not accept Cisneros's view that his counsel's statement was a transparent display of her motivations for proceeding with the trial. The statement is more appropriately viewed as a nebulous remark made to end the discussion and proceed to the next witness. This view is reinforced considering the stage of the trial when the option of a mistrial was given. The investigating officer and Delacruz already testified, and the trial court indicated that the testimony of Delacruz, at least, was lacking. Cisneros's attorney did seek a directed verdict later in the trial based on these deficiencies that already occurred. It is understandable that an attorney would not reveal on the record that she is motivated by the possibility of a directed verdict, when doing so would have alerted the State of the possible need to recall witnesses to address deficiencies.

Many variables can influence counsel's actions during trial. For this reason, appellate courts give deference to trial counsel's strategic choices, refusing to second-guess the decisions made, so long as there is a plausible, reasonable basis for the actions taken. *See Strickland*, 466 U.S. at 659. We are required to consider the representation, in its entirety, when analyzing whether a defendant received ineffective assistance of counsel. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Consistent with this directive, we have considered not only her statement made when electing to proceed with trial, but also the state of the evidence at the time the decision was made—weak testimony from the State's

witnesses—as well as counsel's subsequent actions—seeking a directed verdict—as indications of the trial strategy at work throughout the case. Counsel's statement reasonably can be viewed as consistent with the trial strategy to not highlight the deficiencies in the State's case, move forward, and seek a directed verdict. Cisneros's attack of his attorney's statement ignores these realities.

Further, it appears that defense counsel included Cisneros's opinion in weighing the options. The record reveals that she consulted with Cisneros, then stated, "We will go forward." A reasonable interpretation of this comment is that Cisneros also considered the fortuitous developments at trial and agreed to "gamble with the existing jury" in the hopes that "his choice may have paid off." *Calderon*, 950 S.W.2d at 140.

Based on our review of the entire representation, we hold that it was not deficient. Cisneros's attorney's decision to proceed and attempt for a directed verdict instead of a mistrial was not so outrageous to leave Cisneros with ineffective assistance of counsel. We further conclude that counsel's statement made when notifying the trial court of that decision cannot be read to evidence her sole basis for the decision made. We overrule both issues.

### Conclusion

We conclude that Cisneros did not receive ineffective assistance of counsel; therefore, we overrule both issues and affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).