

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00246-CR

CLARENCE DEWAYNE WILLIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 18-F-1425-005

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

A Bowie County jury convicted Clarence Dewayne Willis as a party to the murder of Tony Sanders. After Willis pled true to the State's punishment enhancement allegations of aggravated assault with a deadly weapon and robbery, he was sentenced to ninety-nine years' imprisonment. On appeal, Willis argues that he did not receive a fair trial because (1) the trial court admitted hearsay statements by a co-defendant, (2) the trial court allowed the jury to hear allegedly false testimony, and (3) counsel rendered ineffective assistance by failing to "obtain[] a more favorable result."

We find that Willis failed to preserve his first two points of error. We also find that Willis has not shown that he received ineffective assistance of counsel. As a result, we affirm the trial court's judgment.

## I.    Factual Background

At trial, it was undisputed that Takyme James shot and killed Sanders.[1] The issue before the jury was whether Willis was a party to the offense. While Willis argued that James acted alone, several witnesses testified about Willis's involvement in the murder.

The State's first witness, Ricky Darden, testified that Sanders was hosting a Sunday night football watch party at a biker's clubhouse that was attended by James. According to Darden and Sanders's wife, Dorsanner Butler, Sanders asked James to leave after he became intoxicated and aggressive toward other partygoers. James responded to Sanders's request by punching him

---

[1] This Court affirmed James's murder conviction in *James v. State*, No. 06-18-00217-CR, 2019 WL 4493470, at *1 (Tex. App.—Texarkana Sept. 19, 2019, no pet.).

in the face, prompting a fight between the two that led to James fleeing the clubhouse. Butler testified that she and Sanders also left the clubhouse and went home.

Kim Willis, cousin to James, Willis, and LaPrince Willis, testified that James "beat[] on [her] door like he was the police and actually startled [her]." Kim said that James was bloody, "riled up," and reported that he had been "jumped." Kim called Willis and LaPrince and asked them to come to her home to help her determine what had happened to James. According to Kim, Willis and LaPrince reported that they were already headed to her house in LaPrince's black Chrysler because they had heard of the altercation. Kim said Willis and LaPrince picked James up and left. LaPrince's wife, Andrea Sanders, also testified that James, Willis, and LaPrince got into LaPrince's vehicle.

According to Butler, Sanders contacted Willis to smooth things over, but Butler and Sanders decided to leave the house because the conversation took an uneasy turn. Butler said that, just as they were going to leave, they saw LaPrince's vehicle coming down their street and decided to get back into the house. She testified that Sanders was fumbling with the keys to the front door and told her he noticed that James and Willis had guns when they got out of LaPrince's car. A neighbor also testified that he saw Willis outside of the car. Butler, who admitted that she did not see a weapon in Willis's hands, testified that James and Willis were "screaming and hollering" as she and Sanders rushed into their home and locked the door behind them. Butler ran into a closet and called 9-1-1. When she came out of the closet, she found Sanders laying on the ground barely responsive. He had been shot.

3

Butler identified James and Willis as the perpetrators during her 9-1-1 call and during conversations with responding police officers, including Brad Thacker, an officer with the Texarkana, Texas, Police Department (TTPD). According to Thacker, Butler said that James and Willis were both yelling at Sanders as they approached his home, and both told him, "[D]on't run in the house now . . . . Don't get scared now." Butler and Thacker testified that the front door was kicked in. According to Butler, Willis "wasn't trying to stop [James]," "was more crooked than [James] was[,] . . . [and] had more hardness than [James] did that night." Thacker said that, based on Butler's description of the getaway vehicle, LaPrince was identified as the driver.

Brian Purcell, a detective with TTPD, testified that LaPrince was the first to be apprehended after Sanders died at the hospital and told TTPD that he had been with Willis. Purcell testified that Willis agreed to an interview with TTPD but provided a version of events different from the versions given by LaPrince and James in their interviews. Willis admitted that Sanders called him when he was with James after the altercation. According to Purcell, telephone records showed that Willis's conversation with Sanders happened at 9:45 p.m. and that Butler's 9-1-1 call was placed at 9:52 p.m. During his interview, Willis claimed that James acted alone while he and LaPrince drove away. Yet, he told officers that, if they found a footprint at the door that could match his, it was because he had given James his shoes, which revealed to Purcell that Willis was there because "[he] specifically knew that the door was kicked instead of shouldered."

4

Purcell testified that James admitted to shooting Sanders, "would not tell [the TTPD] who kicked in the door," but "adamantly denied" that he had kicked in the door. James did tell TTPD that Willis and LaPrince were "hot" after Willis's conversation with Sanders and that "[Sanders] tried to talk [Willis] down, and [Willis] wasn't having it."

Jerome Washington, Willis's cellmate, claimed that Willis said he was involved in Sanders's murder. Without objection, Washington testified that Willis said that "he came to [James's] aid, . . . kicked the door [to Sanders's home], and his cousin . . . shot the gun." Washington said that Willis took the gun to Melvin Hill's home and that it would never be found. Washington also said that James was covering for Willis by not revealing to TTPD who was with him during the crime. Cody Harris, a TTPD detective, testified that Willis said he had gone to Hill's house after the incident during the interview, that this fact had not been released to the public, and that Washington could have only obtained that information from Willis.

After hearing this evidence, the jury found that Willis was a party to the murder. During punishment, Willis pled true to the State's punishment enhancement allegations. The evidence showed that Willis had previously committed an aggravated robbery with a deadly weapon and aggravated sexual assault, that those offenses were reduced pursuant to charge bargains in exchange for pleas of guilty to robbery and sexual assault, and that Willis was sentenced to twenty years' imprisonment for each offense. The State also showed that Willis was previously convicted of both misdemeanor and felony evading arrest, escape, theft, and failing to identify a fugitive from justice and that he was on federal probation for possession with intent to distribute

methamphetamine. As a result of this punishment evidence, the jury assessed a sentence of ninety-nine years' imprisonment.

## I. Willis Did Not Preserve His Hearsay Complaints

During the State's redirect examination of Purcell, the State argued, outside of the jury's presence, that it should be allowed to question Purcell about James's desire to protect Willis. The State argued that Willis had left a false impression that James was trying to protect himself by not revealing who was with him and wished to offer testimony that James was instead trying to protect Willis. Willis argued that he did not open the door to such testimony and that James's statement, "I'm trying to protect my folks," did not specifically name Willis. Willis made no other argument or objection.

After the trial court allowed the questioning, Purcell testified that James made the following statements: (1) "I'm just trying to keep everyone else out of trouble," (2) "Everybody went to tripping, hooting and hollering," (3) "[Willis] and them were on their way to do something," (4) "Willis and LaPrince were the only ones who knew where Sanders lived," and (5) "I don't want to put nobody else's name in this." On appeal, Willis argues that the trial court erred in admitting this evidence because it did not fit the hearsay exception under Rule 801(e)(2)(E) of the Texas Rules of Evidence.[2] The State argues that this issue is unpreserved. We agree.

---

[2] Rule 801(e)(2)(E) provides that a statement is not hearsay if it is an opposing party's statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy." TEX. R. EVID. 801(e)(2)(E).

A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005). As stated in *Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009),

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Resendez*, 306 S.W.3d at 312 (quoting TEX. R. APP. P. 33.1(a)(1)(A)).

"The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Id.* As explained in *Resendez*,

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

"Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. A party opens the door by leaving a false impression with the jury that invites the other side to respond." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (footnotes omitted) (citations omitted). Here, Willis simply argued that he did not open the door to Purcell's testimony, without making any hearsay objection or explaining why the evidence

7

was otherwise inadmissible. Because nothing shows that Willis challenged the evidence on hearsay grounds or that the trial court was aware that Willis was lodging a hearsay objection, we find that Willis has failed to preserve his first point of error on appeal.

## II. Willis Did Not Preserve Any Complaint About Allegedly False Testimony

After trial, while he was represented by counsel, Willis filed a pro se amended motion for new trial alleging that Washington had provided false testimony. The motion attached Willis's own self-serving statement and a statement purportedly executed by Washington claiming that Washington had falsified his testimony in exchange for a deal offered by the State. Nothing showed that the motion for new trial was presented to the trial court.

On appeal, Willis does not argue that the trial court erred by failing to hold a hearing on his pro se motion for new trial or in denying the motion by operation of law. Instead, he argues that the trial court erred in admitting Washington's testimony at trial. A defendant must timely and specifically "object to the State's use of allegedly false evidence to preserve the complaint for appeal." *Davis v. State*, 276 S.W.3d 491, 499–500 (Tex. App.—Waco 2008, pet. ref'd) (citing *Haliburton v. State*, 80 S.W.3d 309, 315 (Tex. App.—Fort Worth 2002, no pet.) (holding defendant must object when a witness gives allegedly false testimony to preserve issue for appellate review)). Because Willis never objected to Washington's testimony on the ground that it was allegedly falsified, Willis did not preserve any complaint that the trial court erred by admitting Washington's testimony. *See* Tex. R. App. P. 33.1(a)(1). As a result, we overrule Willis's second point of error.

**III.    Willis Has Not Shown that His Counsel Rendered Ineffective Assistance**

In his last point of error, Willis argues that counsel rendered ineffective assistance because he did not call a single witness during guilt/innocence, "fail[ed] to present a defensive case," "failed to object to the entry of hearsay statements from various witnesses," waived opening statement during punishment, and presented no mitigating evidence during punishment.

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

The first prong requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As a result, the Texas Court of Criminal Appeals has said that "[t]rial counsel 'should ordinarily be afforded an opportunity to explain his actions before being'" found ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012).

When an appellate record is silent on why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be

9

it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). This is because allegations of ineffectiveness "must be firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). When a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that "under prevailing professional norms," *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

When challenging counsel's failure to call witnesses, "an 'applicant must show that [the witnesses were] available to testify and that [their] testimony would have been of some benefit to the defense.'" *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007) (per curiam) (quoting *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004)). Absent such a showing, "[a] claim of ineffective assistance based on trial counsel's failure to call a witness cannot succeed." *Barnett v. State*, 344 S.W.3d 6, 14 (Tex. App.—Texarkana 2011, pet. ref'd). Because Willis has failed to make any showing that any witnesses were available to testify in his defense, he cannot meet the first *Strickland* prong.

Next, Willis's complaint that counsel failed to present a defensive case is meritless. Throughout trial, counsel argued that James acted alone and crossed-examined witnesses on this issue. Counsel also pointed to the lack of any physical evidence showing that Willis had kicked in the door, presented the theory that Willis and LaPrince had driven away while James committed the act alone, and established that Butler was not an eyewitness to the events because

10

she was hiding in a closet by the time her home was breached. Because it is meritless, we reject Willis's claim that his counsel did not present a defensive case.

In his third ground of ineffective assistance, Willis asserts that his counsel "failed to object to the entry of hearsay statements from various witnesses" without identifying the specific witnesses or hearsay statements forming the ineffective assistance complaint. Conclusory statements do not lay the predicate for an ineffective-assistance claim. *See Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.— Texarkana 2018, no pet.); *Tufele v. State*, 130 S.W.3d 267, 270–71 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In any event, to the extent Willis complains of Purcell's testimony about James's statements, we find that Willis cannot meet the first *Strickland* prong.

"Hearsay is a statement . . . other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted." *Richter v. State*, 482 S.W.3d 288, 299–300 (Tex. App.—Texarkana 2015, no pet.) (quoting *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (citing TEX. R. EVID. 801(d))). "An extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay." *Id.* (quoting *Dinkins*, 894 S.W.2d at 347). "Thus, statements offered to explain how a defendant came to be a suspect of a crime are not hearsay." *Id.* (quoting *Dinkins*, 894 S.W.2d at 347). It is possible that counsel believed that Purcell's statements were not hearsay because they explained how the investigation into Willis began and how Willis became a suspect or that counsel decided to forgo an objection because he did not want to draw the jury's attention to the statements by lodging an objection. Because we

11

will not second-guess counsel's trial strategy, we find that this ineffective assistance claim fails the first prong of the *Strickland* test.

Moving to Willis's complaints on punishment, "[w]hether to deliver an opening statement is entirely optional." *Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Calderon v. State*, 950 S.W.2d 121, 127 (Tex. App.—El Paso 1997, no pet.) ("The option for defense counsel to deliver an opening statement immediately after the State makes its opening statement is entirely discretionary.")). "Few matters during a criminal trial could be more imbued with strategic implications than the exercise of this option." *Id*. (quoting *Calderon*, 950 S.W.2d at 127). From this silent record, we conclude that "[c]ounsel's failure to make an opening statement was not conduct 'so outrageous that no competent attorney would have engaged in it.'" *Id*. (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

Last, Willis's brief assumes that other witnesses could have presented mitigating evidence at his punishment trial, but the record before this Court does not reflect that any additional mitigating evidence existed. "If a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence." *Bone*, 77 S.W.3d at 835. However, "[i]neffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.'" *Id*. (citing *Thompson*, 9 S.W.3d at 813–14). "That record must itself affirmatively demonstrate the alleged ineffectiveness." *Id*. Because the record itself does not affirmatively demonstrate

that there was any mitigating evidence that trial counsel failed to present, Willis has failed to satisfy the first prong of *Strickland*. *See id*. at 834.

Because Willis has not shown that counsel rendered ineffective assistance, we overrule his last point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted: September 15, 2020
Date Decided: November 18, 2020

Do Not Publish

13